PERE MARQUETTE BOOM COMPANY v. ABBOTT L. ADAMS AND
EDGAR A. LORD.

*Boom Company charges—Riparian ownership.*

| 44 | 403 |
|----|-----|
| 69 | 539 |
| 44 | 403 |
| 89 | 105 |
| 44 | 403 |
| 127 | 587 |

Private ownership of lands bounded on navigable fresh waters is not restricted to the meander line; and even if the owner of the bank did not also own land made within the meander line, it would not belong to the United States, but to the State, which always concedes the right of the owner to the shore.

In deciding what sums booming companies may properly charge for booming under Comp. L. ch. 88, it is proper to admit evidence of the fair market value of their booming grounds as helping to afford a basis for a proper estimate, and the fact that they are generally of little value for any other purpose requires considerable latitude to be exercised in admitting evidence; the value is not conclusively fixed by their actual cost to the company.

*It is suggested* that charges for boomage should be fixed by statute, or by some board or local authority empowered for that purpose, instead of being left to be fixed by the booming company.

Error to Mason.    Submitted Oct. 6–7.    Decided Oct. 20.

REPLEVIN.    Defendant brings error.    Reversed.

*White & McMahon* for plaintiff in error.    Lands beyond the meander line of a navigable stream do not belong to the United States: *Rice v. Ruddiman* 10 Mich. 125; *Watson v. Peters* 26 Mich. 508; *Twogood v. Hoyt* 42 Mich. 609.

*C. G. Wing* for defendants in error, cited as to the title to lands outside of a meander line of a stream, *Railway Co. v. Schurmeir* 7 Wall. 272; *Barney v. Keokuk* 94 U. S. 324.

COOLEY, J.    The substantial question involved in this case is, whether the plaintiff in error was entitled to make certain charges which were insisted upon for the running and booming of logs for the defendants in error.    It seems that the company, having a boom on the Pere Marquette lake, and being engaged in running logs on Pere Marquette river, had

run and boomed logs for defendants in error for several years. The most of the company's charges were paid, but some were disputed; and having at length refused to deliver certain logs until the charges were satisfied, the defendants in error replevied them. The replevin suit is the suit now before us. It seems to have been determined in the circuit court that all reasonable charges had been paid.

The statute under which plaintiff in error is organized (Comp. Laws, ch. 88) empowers the company, " in all cases where no rate is fixed by contract, to charge and collect a uniform and reasonable sum for boomage," etc. § 14. As bearing upon the question whether more than a reasonable sum had been charged, the company gave evidence tending to show that the real estate employed by them in their business was of the value of ninety thousand dollars, and their personal estate of the value of ten thousand dollars. The real estate consisted of the booming ground in Muskegon lake and the adjacent shore, and this shore appears formerly to have been a marsh, or perhaps was covered by the waters of the lake. In answer to this showing defendants in error gave evidence tending to show that the value of the boom company's personal property was merely nominal. They then offered to show that the land of the company, which was supposed to be so valuable, was in fact within the meander line of Pere Marquette lake, as surveyed under authority of the general government. This being objected to, the counsel offering it explained the object to be to show that the land, appearing by the survey to be a part of the lake, and having since become made land, it now belongs to the United States. After this explanation the court received the evidence.

The ruling was erroneous. It has been repeatedly decided in this State that private ownership of lands bounded on navigable fresh water is not restricted to the meander line. *Lorman v. Benson* 8 Mich. 18; *Bay City Gaslight Co. v. Industrial Works* 28 Mich. 182; *Maxwell v. Bay City Bridge Co.* 41 Mich. 453. If it were held that the owner of the bank did not also own the land within the meander line, it would belong not to the United States, but the State,

(*Pollard, Lessee v. Hagan* 3 How. 219,) and it is notorious that the State never questions the right of the owner to the shore, but always concedes it.

There seems to have been on the trial great difficulty encountered by both parties in fixing upon any standard whereby to measure the reasonableness of the boom company's charges. Both sides deemed it admissible and important to take into account the real estate made use of by the company in its business, upon the theory that upon the cost or the worth of this the company was entitled to reasonable returns, which would only be received through charges for boomage. The plaintiffs contended, however, that the real estate was to be treated simply as so much of the company's capital, representing the money it had cost, while the company claimed it was to be considered capital according to its present value.

There is a difficulty in measuring the value of booming ground, growing out of the fact that it is commonly of little worth except for the particular business, and for that business the value is likely to be estimated by the profits resulting from its use. These profits depend on the charges for boomage; and if those are excessive the apparent value of the land will be very great. If then the reasonableness of the charges is to be measured by the apparent value of the land, the more excessive are the charges, the easier it will be to establish their apparent reasonableness, and the value of the land would go up *pari passu* with the exactions. This could never be allowed.

The charges of a log-driving and booming company are charges for labor and responsibility only, except that the company must provide for itself the conveniences for making the labor available to accomplish the desired purpose. In this particular the company is on a like footing with persons engaged in many other employments; hackmen and draymen for example, whose charges in the main are for services, but who must have some capital, and must take this into account in estimating charges. But in the case of the boom company, the capital must generally be a subordinate consideration; the

principal matter to be taken into consideration being the value of the services and a fair compensation for the responsibility assumed. But it is proper to take into account the value of all property necessarily made use of in the business; not necessarily the cost, and not necessarily any factitious value which their charges may have given to it; but the fair market value, arrived at with all such aids as the circumstances afford. The fact that booming ground is generally of little value for any other use, and the consequent difficulty in estimating the market value, renders it important that considerable latitude should be allowed in putting in evidence. No doubt it would be proper to show the cost of the ground to the company, as bearing upon the question of value, but not conclusively fixing it.

The case shows, however, the importance of some legislation for fixing the charges, either by statute directly, or by some board or local authority empowered for the purpose. The objections to leaving such charges to be measured by the discretion of the company itself, or by the uncertain judgment of successive juries, are very manifest.

Judgment must be reversed with costs and a new trial granted.

The other Justices concurred.