State ex rel. City of St. Louis v. Laclede Gaslight Co.

## The State *ex rel.* The City of St. Louis v. The Laclede Gaslight Company.

1. **City Ordinance**: GAS COMPANY: CHARTER: CONTRACT. A city ordinance, granting to a gas company, its successors and assigns the privilege of furnishing gas to the city and to private consumers for a named period, is not void because the time extends beyond the termination of the company's chartered existence, the ordinance providing that it might transfer all of its rights and privileges, property and franchises, given by the ordinance, to any organized gas company of the state which would, within twenty days after the transfer, file its written acceptance of the ordinance and give bond to perform all the agreements required of the original company.

2. **Contract in Favor of Third Person**: ENFORCEMENT OF. A contract may be enforced by a third party when entered into for his benefit, though he is not named therein.

3. **City Ordinance**: MAXIMUM PRICE OF GAS. The ordinance which was accepted by the gas company having fixed the maximum price of gas, the city cannot reduce such price.

4. ———: REGULATION OF PRICE OF GAS. The charter of the company being a contract between it and the state which authorized it to fix the price of gas manufactured by it, such price could not be diminished by subsequent legislative action, state or municipal.

5. **Contract**: STATUTE: FACTS IMPLIED. Whatsoever the law necessarily implies in a statute or in a contract is as much a part thereof as if expressly stated.

6. **Police Power**: PRICE OF GAS: CONTRACT. The regulation of the price of gas by the state, or by municipalities created by it, is not the exercise of a police power which cannot be abridged by a contract.

### *Mandamus.*

PEREMPTORY WRIT DENIED.

*L. Bell* for relator.

(1) The city of St. Louis is and has been since the year 1870 authorized to regulate the price and quality of gas. St. Louis Charter of 1870, art. 3, par. 12,

sec. 1; Laws, 1869–70, p. 463; Present charter, R. S. 1889, p. 2098; *St. Louis v. Tel. Co.*, 96 Mo. 623. (2) The Laclede Gaslight Company is not, under the terms of its charter, exempted from regulation by the city as to the price of gas. The charter of 1837 (Laws, p. 598) and subsequent enactments are silent as to the price of gas. (3) The Laclede Company is not, by virtue of any rights acquired, under ordinance 13494, exempted from regulation by the city of St. Louis as to price and quality of gas. (4) Ordinance 15482 is a constitutional and valid enactment, and is susceptible of enforcement by *mandamus*.

*Boyle, Adams & McKeighan*, and *G. A. Madill* for respondent.

(1) Charters of private corporations are contracts, protected from invasion by the constitution of the state of Missouri and the United States. Const. of Mo., art. 2, sec. 15; Const. of United States, art. 1, sec. 10; *Chenango v. Bridge Co.*, 3 Wall. 51; *College Case*, 4 Wheat. 518. (2) Ordinance number 15482 of the city of St. Louis, within the meaning of the constitution, impairs the obligation of respondent's contract with the state of Missouri, evidenced by its charter. *Edwards v. Kearzey*, 96 U. S. 595; *Bank v. Sharp*, 6 How. 327; *College Case*, 4 Wheat. 712; *Bank v. Knopp*, 16 How. 380; *Green v. Biddle*, 8 Wheat. 84; *Sloan v. Railroad*, 61 Mo. 32; *Railroad v. Minnesota*, 134 U. S. 455. (3) Ordinance number 15482 cannot be upheld, as against this respondent, as an exercise of the police power of sovereignty. Cooley's Const. Lim., star p. 577, and cases cited; *St. Louis v. Gaslight Co.*, 70 Mo. 69; *Sloan v. Railroad*, 61 Mo. 24; *St. Louis v. Fitz*, 53 Mo. 582; *State ex rel. v. Greer*, 78 Mo. 188; *Scotland County v. Railroad*, 65 Mo. 135; *State v. Noyes*, 47 Me. 212–213; *People v. Railroad*, 9 Mich. 285; Dillon's Mun. Corp., sec. 303, *et seq.; Gas Co. v. Mfg. Co.*, 115

U. S. 650 ; *Gas Co. v. Gaslight Co.*, 115 U. S. 683 ; *Rowse v. Home of the Friendless*, 8 Wall. 430 ; *Rowse v. Washington University*, 8 Wall. 439. (4) The contract between the city of St. Louis and the St. Louis Gaslight Company of date January 30, 1886 ( ordinance number 13494 ), having been, with the consent of the relator, duly assigned to respondent, protects respondent from the operation of ordinance 15482. *First.* The city of St. Louis and the St. Louis Gaslight Company, each and both, had power to make the contract represented by ordinance number 13494. Laws of Missouri, 1838-9, sec. 13, p. 244; *St. Louis v. Gaslight Co.*, 70 Mo. 97-98; Charter of St. Louis, art. 3, sec. 26, sub. 2 ( R. S. 1889, p. 2096 ); *Ferrenbach v. Turner*, 86 Mo. 419-420; *Building Co. v. Tel. Co.*, 88 Mo. 272. *Second.* The Laclede Gaslight Company ( the respondent ) and the city of St. Louis had power to make and become parties to the contract, represented by ordinance number 13494. Charter of Laclede Gaslight Company, sec. 5 ; *St. Louis v. Gaslight Co.*, 86 Mo. 499, 500. *Third.* The St. Louis Gaslight Company was not disabled from accepting a grant extending beyond its corporate life. 1 Morawetz, Private Corp., sec. 330, p. 314, and 2 Morawetz Private Corp., sec. 1031, p. 989 ; Angell & Ames on Corporations [ 11 Ed. 1882 ] sec. 195, pp. 177, 178 ; *Nicholl v. Railroad*, 12 N. Y. 121 ; *Bank v. Caldwell*, 16 Ind. 469. *Fourth.* Ordinance number 13494, by its terms, confers full power upon the respondent to sell gas at $1.18¾ per thousand cubic feet. Such is the obvious meaning of the language employed in regard thereto, especially so when read in the light of other similar expressions contained in the ordinance ; and such is necessarily the meaning when sections 2 and 3 are considered in their true light, as conditions attached to a grant. City Charter, art. 3, sec. 13 ( R. S. 1889, p. 2094 ); *State ex rel. v. Railroad*, 85 Mo. 263 ; 2 Story's Eq. Jur., sec. 1319 ; *Livingston v. Stickles*, 7 Hill, 255 ; *Towne v. Bowers*, 81 Mo. 497;

*Catlin v. Ins. Co.*, 1 Sumner, 134; Martindale on Cont., secs. 526, 339–99; *Hoyt v. Kimball*, 49 N. H. 322; 1 Platt on Leases, p. 116. *Fifth.* The contract (ordinance number 13494) is not an unlawful interference with the exercise of the power, conferred by charter upon the city of St. Louis, to regulate the price of gas. Charter of the City of St. Louis, art. 3, sec. 26, sub. 7 (R. S. 1889, p. 2098); Charter City of St. Louis, art. 3, sec. 26 (R. S. 1889, p. 2096); Laws of Missouri, 1838–9, p. 244; *St. Louis v. Gaslight Co.*, 70 Mo. 97–98; *Hovelman v. Railroad*, 79 Mo. 632; *Railroad v. Springfield*, 85 Mo. 674; *State ex rel. v. Railroad*, 85 Mo. 263; *Indianapolis v. Gaslight Co.*, 66 Ind. 397; *St. Louis v. Gaslight Co.*, 70 Mo. 69; *Newport v. Light Co.*, 84 Ky. 168. *Sixth.* The contract expressed in ordinance number 13494 is not invalid, as an interference with the exercise of lawful police regulations on the part of the city. *St. Louis v. Gaslight Co.*, *supra*; *Butcher Union Co. v. Crescent City*, 111 U. S. 706. See cases cited under head 3. (5) The city of St. Louis having received the benefits accruing to it by the performance, on the part of the St. Louis Gaslight Company, of its obligations, under ordinance 13494, is now estopped from denying the validity of that ordinance. *St. Louis v. Gaslight Co.*, *supra*; 2 Parsons on Cont., star p. 790; *Hathaway v. Payne*, 34 N. Y. 92; Bigelow on Estoppel [2 Ed.] p. 514; *Tureman v. Stephens*, 83 Mo. 223–224; *Hitchcock v. Galveston*, 96 U. S. 341; Cook's Stock, Stockholders and Corporations, sec. 744; *Buford v. Keokuk*, 69 Mo. 611. (6) The city of St. Louis ratified and confirmed the contract (ordinance 13494) by receiving and filing the written acceptance of the terms thereof by respondent and by accepting the bond of the respondent, executed and filed pursuant to the provisions of section 12, and thereby brought itself into direct contract relations with respondent. (7) Ordinance number 15482 is void because it provides no scheme for a hearing by the

municipal assembly of the city of St. Louis on the sub-ject of what is a reasonable price for gas within the city of St. Louis. (8) The ordinance number 15482 is void because it imposes an excessive fine within the meaning of the constitutions of the United States and of this state. (9) If the state cannot pass a law impairing the obligation of pre-existing contracts *a fortiori*, the municipal assembly of St. Louis cannot do it. Cooley's Constitutional Limitations, p. 241.

*Gibson, Bond & Gibson* also for respondent.

(1) A contract between the state and a corpora-tion created thereunder is formed in the grant and acceptance of a charter of corporate life and fran-chises; the acceptance of such charter completes its binding force and obligation upon the legislature according to the terms thereof. *College v. Woodward*, 4 Wheat. 518; *Von Hoffman v. Quincy*, 4 Wall. 535; *Rowse v. Home of Friendless*, 8 Wall. 430; *Humphrey v. Pegnus*, 16 Wall. 244; *Farrington v. Tennessee*, 95 U. S. 679; *Gas Co. v. Gas Co.*, 115 U. S. 683; *Sloan v. Railroad*, 61 Mo. 24. (2) A municipal assembly is a delegated agency of the state for purposes of local government. Within its lawful sphere its ordinances have the force of laws. It may also enter into contracts in pursuance of powers to that effect, and such con-tracts, when so made, are not subject to be impaired nor abrogated by subsequent ordinances, or by any munic-ipal action against the will of the parties thereto. *Springfield v. Railroad*, 85 Mo. 674; *State ex rel. v. Railroad*, 85 Mo. 263; *City of Kansas v. Corrigan*, 86 Mo. 67; *Holman v. Kansas City*, 79 Mo. 633; *State v. Miller*, 66 Mo. 329; *State v. Miller*, 50 Mo. 129; *State v. De Bar*, 58 Mo. 395; *St. Louis v. Foster*, 52 Mo. 515. (3) The power to fix rates for the exercise of public franchises is a valid subject-matter of contract between the state and the person exercising such public function,

and when it has once been regulated and fixed by contract, the state and its representatives are bound by the terms of the contract so made. *Sloan v. Railroad*, 61 Mo. 24; *Stone v. Loan & Trust Co.*, 116 U. S. 307; *Railroad v. Minnesota*, 134 U. S. 418. (4) If the power to fix such rates and charges is a police power, it is also a branch of that power that is alienable; for the police power is divisible into two branches—the alienable and the inalienable. This distribution of the police power into two classes is grounded upon an essential distinction. Such police powers as are necessary to the existence of government, or to the safety of public health and morals, belong to the inalienable class, and cannot be bargained away. Such police powers as do not fall within the above definition belong to the alienable class, and may become matter of contract between the state and its representatives on the one hand, and private persons or corporation on the other, and after having been regulated by contract can only be exercised in conformity with the conditions of such contract. *Gas Co. v. Light & Heat Co.*, 115 U. S. 650; *Waterworks Co. v. Rivers*, 115 U. S. 674; *Gas Co. v. Gas Co.*, 115 U. S. 683; *Butchers' Union Co. v. Crescent City*, 111 U. S. 746. (5) Where the state is not restrained by a lawful contract, it can only exercise its power to fix rates and charges for public service, by proceeding judicially, and establishing a rate according to "due course of law." Any act of a legislature of a state finally fixing a rate or schedule of charges without hearing and judicial consideration of the reasonableness of the amount so fixed is void. *Railroad v. Warehouse Com'r*, 134 U. S. 418. (6) It is not necessary that a consideration should be adequate in point of value to make it sufficient. If benefit or advantage be received by the promisor from the promisee, or if detriment or injury be sustained by the promisee, it will constitute a sufficient consideration. *St. Louis v. Gaslight Co.*, 70 Mo. 116; *Marks v. Bank*, 8 Mo. 316. (7) Where a

party has accepted and made his own the benefit of a contract, he cannot avoid its obligations as to himself by his own act. *Shaw v. Tracy*, 83 Mo. 224; Sedgwick, Statutory & Const. Construction, p. 73; *Bank v. Matthews*, 98 U. S. 621–629; 12 Fed. Rep. 766. (8) Where a party by his acts or words causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous condition, he will be precluded from averring anything to the contrary against the party so altering his condition. *Hitchcock v. Galveston*, 96 U. S. 341; *Chouteau v. Goddin*, 39 Mo. 250; *St. Louis v. Gaslight Co.*, 70 Mo. 99; *State Board v. Railroad*, 47 Ind. 407. (9) A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided. *Chouteau v. Gibson*, 76 Mo. 47; *School Trustees v. Stocker*, 42 N. J. L. 117. (10) A promise made by one to another upon consideration received from the latter for the benefit of a third person, may be enforced by such third person who is presumed to assent thereto in the absence of dissent by suit brought in his own name. *Meyer v. Lowell*, 44 Mo. 331; *Rogers v. Gosnel*, 58 Mo. 591; *Cress v. Blodgett*, 64 Mo. 452; *Fitzgerald v. Barker*, 70 Mo. 687. (11) The power of the city of St. Louis, the St. Louis Gaslight Company and the Laclede Gaslight Company to make contracts regulating the price of gas is an adjudicated fact. *St. Louis v. Gaslight Co.*, 70 Mo. 69; art. 13 of the Charter of the St. Louis Gaslight Company; *St. Louis v. Gaslight Co.*, 86 Mo. 495, 500; Charter of the City of St. Louis, art. 3, sec. 26, par. 2; Charter of Laclede Gaslight Company. (12) *First.* A corporation has such implied powers as are necessary to carry out the express powers granted. *Second.* The grant to a corporation of the right to "make and vend gas" necessarily implies the

powers to fix a rate of charges for such gas. Angell & Ames on Corp. [ 11 Ed.] sec. 271 ; *Commission Case,* 116 U. S. 307, 329 ; *Gaslight Co. v. City,* 86 Mo. 495.

SHERWOOD, J.—This, an original proceeding, has been instituted in this court, to compel by our mandate the respondent to comply with the provisions of city ordinance 15482, which went into effect March 31, 1890, by supplying gas to consumers at a sum not exceeding ninety or ninety-five cents per one thousand cubic feet.

The respondent has made return to the alternative writ, and a general statutory demurrer has been filed thereto, to the effect that it contains no facts to constitute a defense to the relief sought.

As the pleadings and the various statutes and ordinances relating to the subject-matter of this litigation are contained in the statement of the relator which will in substance preface this opinion, they will only be briefly referred to as occasion may require.

By virtue of, and in compliance with, ordinance 13494, approved January 30, 1886, and within ten days prescribed therein, the St. Louis Gaslight Company filed with the city register of the city of St. Louis its written acceptance of the ordinance mentioned, and bond as in section 12 of said ordinance is prescribed, and proceeded to do all that said ordinance required by reducing the price of gas to consumers, and by reducing the price of supplying, cleaning, lighting and extinguishing the public lamps of the city to the extent of $7 each per annum. This waiver and rebate by the company in the time between the acceptance of the ordinance, to-wit, in 1886, up to the time of the expiration of the corporate life of the original company, to-wit, January 1, 1890, amounted to the sum $1,574,244, etc., which otherwise that company would have been entitled to, and would have received. The ordinance thus accepted by the St. Louis Gaslight Company embraced in its terms not only that company but its successors and assigns, and was made in behalf of said

company, and its successors and assigns, and extended the time for lighting the city, etc., from the expiration of the original period, to-wit, January 1, 1890, to the corresponding period thirty years thereafter.

By sections 2 and 3 of that ordinance it was provided that:

"Sec. 2. The price of gas to consumers in said district until January 1, 1890, shall not exceed $1.50 for each one thousand cubic feet of gas sold to them, and from January 1, 1890, to January 1, 1920, it shall not exceed $1.25 for each one thousand cubic feet of gas sold to them.

"Sec. 3. The said St. Louis Gaslight Company and its successors and assigns will grant to consumers a reduction of five per cent. on each one thousand cubic feet of gas sold to them after January 1, 1890, from the price above named on all bills paid within five days after presentation, or the net price of $1,18¾ cents per thousand cubic feet of gas paid for within said time."

Section 13 of the ordinance confers power upon the St. Louis Gaslight Company, after its acceptance as aforesaid to transfer, all its rights, privileges, property, franchises, etc., etc., conferred upon it by this ordinance to any other gaslight company organized under the laws of this state, and provided that such corporation receiving said transfer shall be subject to all conditions and perform all agreements required of the original company by the ordinance, and that such transferee should within twenty days after receiving such transfer file the written acceptance and give the bond required by section 12 aforesaid. On the twenty-fourth of December, 1889, the St. Louis Gaslight Company, for value received, sold to the respondent company all its rights, property, privileges, franchises, etc., and, within twenty days thereafter, the latter company filed its written acceptance of the provisions of the ordinance as required by section 12, and gave bond, etc.

After these things had occurred, the ordinance first aforesaid was passed, whereby the price of gas was cut down from $1.25, or the net price of $1.18¾ per thousand cubic feet as by section 3 provided, to ninety cents for said quantity of gas.

There can be no doubt that the foregoing facts and transactions, which the demurrer admits took place, constituted contractual relations between the city and the St. Louis Gaslight Company, and between the two gaslight companies, as well as between the city and the respondent. Nor, speaking in a general way, can there be any more doubt of the capacity of the respective parties thus to contract. Such power the city certainly possessed, and the gaslight companies possessed the like powers given by their respective charters, as has been heretofore affirmed by this court in two instances. *City of St. Louis v. Gaslight Co.*, 70 Mo. 69; *St. Louis Gaslight Co. v. City of St. Louis*, 86 Mo. 495.

The points at issue, however, between the contestants in the present litigation are four in number: *First.* That the St. Louis Gaslight Company had no power to contract with the city as to matters necessarily extending beyond the limit of its chartered existence; *second*, that ordinance 13494 does not exempt the respondent company from regulations by the city of the price of gas; *third*, that there is nothing in the charter of the respondent company which forbids the reduction by the city of the price of gas after the first day of January, 1890; and, *fourth*, that, even if that ordinance and the acceptance thereof may be regarded as constituting a contract, yet that such contract, if it has the effect claimed for it by the respondent, was beyond the power of the city to make, being nothing less than a futile attempt to barter away a police governmental power, affecting the health and welfare of the people of St. Louis. Of these points in the order indicated.

I. As to the first:

The capacity of a corporation to take and its power to convey property, real, personal or mixed, differs in no essential particular from the capacity and power of natural persons in like circumstances. Morawetz, Priv. Corp., secs. 330, 1031, and cases cited; Angell & Ames on Corp. [11 Ed.] sec. 195, and cases cited. To deny this proposition would be to deny to an individual the capacity to take title in fee, because life's narrow span would not admit of his perpetual enjoyment of the title thus taken.

But this is not the only answer to this objection; the contract in question was entered into not only with the St. Louis Gaslight Company, but with its "*successors and assigns*," whoever they might be, and the ordinance under consideration clearly contemplates that all rights granted to the original company would be by that company granted to another company whose longer lease of corporate life would enable it to perform the contract and fulfill its various conditions.

That a contract may be enforced when entered into for the benefit of a third party though *not named*, is well settled. *Meyer v. Lowell*, 44 Mo. 328, and cases cited; *Rogers v. Gosnell*, 58 Mo. 589; *Cress v. Blodgett*, 64 Mo. 449. But, aside from the foregoing considerations, the respondent company having purchased all the rights, property, etc., of the original company, and having, in compliance with section 13 of the ordinance, filed its written acceptance and given bond to the city, thenceforth the contract became a contract with the *transferee*.

II. The second point for discussion presents no greater obstacle to a ready determination than the one just considered. Sections 2 and 3 of the ordinance, when considered together, show that while the price of gas was not to *exceed* $1.25, from January 1, 1890, to January 1, 1920, yet that up to that sum was a perfectly legitimate price to charge for the production of gas. If the contention of relator is to prevail, then it would

have been but an idle ceremony to have inserted in the ordinance *any maximum price at all*, since, according to that contention, the city had *carte blanche* to insert at her pleasure any figure *beneath* the *maximum*, and to compel the respondent to accept it.  But this would have been tantamount to making a contract, where *one party dictates the price*, something which certainly seems at variance with all of our preconceived ideas as to the fundamentals of a contract.

With equal propriety a payee in a promissory note, payable on or before a period of six months after its date, might contend that this was only the *maximum of time* in which the payor had to pay, and that as there was nothing in the note "*prohibiting*" payment *before* the ultimate date, that *therefore* it would be in the "*discretion*" of the payee to demand payment at an earlier period.  We are not of the opinion that the ordinance will bear any such unwarrantable construction as relator desires us to place upon it.  This is a case where "affirmative specification excludes implication." *Maguire v. State Savings Ass'n*, 62 Mo. 346, and cases cited; Broom, Leg. Max. [ 8 Ed.] 652, 667.

Counsel for relator claims that on this point the rights of the city and of the respondent company "under the ordinance, *are reciprocal.*"  If so, then, manifestly, the respondent would have as much right to charge *above* the price mentioned as would the city to compel the acceptance of a sum *below* it; otherwise there could be no *reciprocity*.  But, in addition to the views just expressed on this point:  Section 3 fixes an absolute or net price of $1.18¾ for the gas, provided prompt payment be made therefor.  The literal meaning of the word "*net*" forbids all thought or theory of *deductions, ex. gr.* "net profit," "net weight," "net income."

III.  The third point at issue, as already stated, presents the question whether the charter of the respondent company, granted by the state, contains such

features of a contractual nature as forbid and prevent any interference therewith either by the state government or by any municipality representing the authority of that government. The respondent company exists by virtue of a special charter granted March 2, 1857, as amended by an act approved March 26, 1868.

By the provisions of section 1 of the act of 1857, the respondent has power to contract and be contracted with, without condition or limitation.

By the provisions of section 5 of said act of 1857, the respondent has power, throughout a certain portion of the corporate limits of the city of St. Louis, to lay its pipes and fixtures, and to make and vend gas, with no condition or limitation as to price to be charged therefor, and to have and exercise all other powers necessary to execute and carry out the privileges and powers granted to respondent by the act.

By the provisions of section 7 of the act of 1857, any interference with the respondent, in the exercise of the privileges granted to it by that act, subjects the offender to a liability to the respondent of $1,000.

By the provisions of section 8 of said act of 1857, the respondent and its charter are expressly exempted from the operation of sections 6 and 7, of article 1, of the act entitled, "An act concerning corporations," approved November 23, 1855.

Said section 6 is as follows: "If any corporation hereafter created by the legislature shall not organize and commence the transaction of its business within one year from the date of its incorporation, its corporate powers shall cease." R. S. 1855, ch. 34, art. 1, sec. 6.

Said section 7 is as follows: "The charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension and repeal in the discretion of the legislature." R. S. 1855, ch. 34, art. 1, sec. 7.

By the first section of the said act, approved March 26, 1868, the rights, privileges and franchises, granted

to respondent in a portion of the city of St. Louis by section 5 of the act of 1857, were extended throughout the entire corporate limits of the city.

The fifth section of the original act incorporating the respondent gave it ample powers of contracting with the city for making, and vending gas, etc., etc., and the amendatory act made its franchises coextensive with the boundaries of the city. This point was inferentially thus ruled in *City of St. Louis v. St. Louis Gaslight Co.*, 70 Mo. 69, and thus ruled directly in a later case. *St. Louis Gaslight Co. v. City of St. Louis*, 86 Mo. 495.

It is not open to doubt or dispute that this power to make and vend gas carries with it as an inevitable incident the right to *fix the price of the gas thus made and sold.* No other conclusion can be drawn from the premises. A *sale* implies a *price.* It would be but the granting of a barren right indeed, which would confer power to incur expense and perform labor, and yet deny the power to fix and to reap the fruit of that labor, to-wit, the *price.* Whatsoever the law necessarily implies in a statute or in a contract is as much part and parcel thereof as if expressly stated therein. So that, by the terms of the charter of the respondent company its right to fix the price of its product was as much a part of its charter as if it had been in terms set forth in section 5 of the original act of incorporation.

But, if a price had thus been set forth, no one familiar with constitutional principles but would at once deny that the right to contract for the sale of gas at such price could anywise be impaired. For reasons already given, the result of the contract between the state and the respondent company was the same as if the state in granting the charter had set a price at which the respondent might make and vend gas, and then declared that the powers thus granted should be exempt from subsequent "alteration, suspension or repeal" by the legislature.

The authorities, cited both from our own reports as well as elsewhere by respondent's counsel, abundantly exemplify this familiar, doctrine. It is quite unnecessary to cite or to quote them.

IV. But it is claimed by relator that the power to regulate the price of gas, having been granted by the state to the city in 1870, was a police governmental power which could not be bartered away by the government, state or local. If this position be correct, then, of course, the charter of the respondent company was *valueless* when it came from the hands of its grantor, the state, because it possessed none of the elements of a contract about it. In short it was *ultra vires* the state to make such a grant.

It is not to be doubted that there is a limit to the power of the legislature to tie the hands of subsequent legislatures in respect to the exercise of what is termed the "police power." Thus it is said : "No legislature can bargain away the public health or the public morals." *Stone v. Mississippi*, 101 U. S. 814.

But certainly there is a limit in this regard over which legislatures and municipalities cannot pass ; they cannot, in the exercise of *assumed* police powers, violate charter contracts and overthrow vested righs. On this subject Judge COOLEY aptly says : "The limit to the exercise of the police power in these cases must be this : The regulations must have reference to the comfort, safety or welfare of society ; they must not be in conflict with any of the provisions of the charter ; and they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers. In short, they must be police regulations in fact, and not amendments of the charter in curtailment of the corporate franchise." Cooley, Const. Lim. [5 Ed.] 712.

In a recent case in the supreme court of the United States, a case presenting many features in common with the one at bar, it was laid down that charters granted at

State ex rel. City of St. Louis v. Laclede Gaslight Co.

different times to two gas companies, with exclusive *privileges*, were *contracts* which could not be impaired by subsequent state legislation, nor by an after-adopted clause in the constitution of Louisiana, forbidding monopolies. In that case a similar objection was made as now taken here as to the legislature having transcended its powers in granting such charters, but the objection was overruled. *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650.

As a summary of our views herein, we consequently hold, *first*, that the charter of the respondent company was a contract between it and the state which authorized it to fix the price of gas which it should manufacture, and which price could not be diminished by subsequent legislative action, whether state or municipal; *second*, that ordinance 13494, when accepted as therein provided by the St. Louis Gaslight Company, constituted a valid contract between that company and the city of St. Louis ; *third*, that by the subsequent transfer by the original company of its property rights, franchise, etc., etc., to the respondent company, and by written acceptance, etc., of ordinance 13494, by that company, a like valid contract was formed between the city and that company ; *fourth*, which contract was beyond the power of the state to impair or in any manner affect by ordinance 15482.

We therefore deny the peremptory writ, All concur, except BARCLAY, J., who will express his views hereafter.

### SEPARATE OPINION.

BARCLAY, J.—As to the proper construction and effect of ordinance 13494, my concurrence is given to what is said in the foregoing opinion in the first and second paragraphs therein indicated.

On the other points discussed it seems to me unnecessary at this time to express an opinion.