[No. 12354.  *En Banc.*  December 15, 1915.]

WISHKAH BOOM COMPANY, *Respondent*, v. GREENWOOD
TIMBER COMPANY, *Appellant*.[1]

LOGS AND LOGGING—BOOM COMPANIES—TOLLS—REGULATION—PUB-
LIC SERVICE COMMISSION. 3 Rem. & Bal. Code, § 8626-1 *et seq.*, not
having expressly conferred upon the public service commission au-
thority to fix the rates to be charged by booming and driving com-
panies for booming and driving logs, the commission has no juris-
diction over such companies in the matter of fixing tolls.

SAME—BOOM COMPANIES — TOLLS — REASONABLENESS — REVIEW BY
COURTS. Under Rem. & Bal. Code, § 7123, providing that driving and
booming companies shall be entitled to charge and collect reasonable
and uniform tolls for driving and booming logs, to be fixed by the
company's board of directors, and "not to exceed" one dollar per
thousand for driving or sixty cents per thousand for booming, the
courts have power in any given case to determine what is a reason-
able charge for the services performed; the legislation not being
parallel to that class of rate legislation which fixes maximum rates,
and the requirement that the tolls shall be reasonable being para-
mount and necessarily within the protection of the law and the courts
in the last instance (MORRIS, C. J., and MOUNT, J., dissenting).

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered May 15, 1914, in favor of
the plaintiff, in consolidated actions to foreclose liens upon
logs, tried to the court. Reversed.

*W. H. Abel*, for appellant.

*Hogan & Graham* (*Grosscup & Lee*, of counsel), for re-
spondent.

HOLCOMB, J.—Respondent brought two actions to fore-
close liens for driving and booming logs on the Wishkah
river, which actions were consolidated in the court below.

Appellant is engaged in logging on a branch of the Wish-
kah river, and respondent, by means of splash dams, drives
appellant's logs down the river to tide water, where respond-
ent maintains and operates a boom wherein it booms and

[1]Reported in 153 Pac. 367.

rafts the logs.   Each of respondent's complaints, in the fourth paragraph, alleges that the boom company, prior to June 1, 1911, duly established a schedule of uniform rates and tolls, and that the rates so established are sixty-five cents for driving and forty cents for booming, and that the same are fair and reasonable rates.   In the third paragraph of each answer of appellant, it denied each allegation of respondent's fourth paragraphs, including the allegation that the rates were reasonable, and in the fourth paragraph of each answer it alleged that thirty-five cents is a reasonable charge and rate for the driving services performed, and that any higher rate would be, and is, unreasonable and excessive; and that thirty cents is a reasonable boom rate, and that any higher rate would be, and is, unreasonable and excessive. A stipulation was made in the trial court as to all other facts, to dispense with proof, and the only question left for determination was the reasonableness of the driving and booming rates.   On motion of respondent, the trial court struck the fourth paragraph of each answer, and also rejected appellant's proffer of evidence as to reasonable rates for driving and booming.   Decrees were rendered foreclosing the liens, from which decrees defendant appeals.

I.   The trial court erroneously concluded that it was without jurisdiction to entertain the question of the reasonableness or unreasonableness of the rates, for the reason that such jurisdiction exists in the public service commission.   It is suggested by counsel for both parties that the public service commission disclaims any jurisdiction over driving and booming companies, and also that, under the public service commission act (Laws of 1911, ch. 117, p. 538; 3 Rem. & Bal. Code, § 8626-1 et seq.), no such authority is conferred. Counsel agree that, "while the public service commission act directly repeals statutes relative to railroads, telephone companies, irrigation companies, and the like, the repealing section makes no reference to the existing booming and driving statutes, and that, since repeals by implication are not fa-

vored, the act does not apply to booming or driving companies and operations."

The public service commission is a body with purely and expressly delegated legislative and political powers. It has no inherent power or authority other than that necessarily incidental to its express and delegated powers. The act creating and controlling it nowhere mentions in terms boom companies or driving companies, or their operations or rates. We conclude, therefore, that the commission has no jurisdiction over them.

II.   We now consider the correctness in result of the refusal of the court below to entertain jurisdiction to determine the reasonableness of the rates for driving and booming. The question involves consideration of several distinct statutes, viz., the boom statute of 1890 (Laws 1889-90, p. 470), the driving statute of 1895, and the amendments thereto of 1901 and 1909. Rem. & Bal. Code, § 7123.

The driving act of 1895 authorized the improvement of rivers and streams to render them navigable for floating logs and timber products. Laws of 1895, p. 129, § 4. In consideration of such improvements, the improvers were authorized to render services in driving and "*to charge and collect reasonable and uniform tolls for such service.*" The act, (Laws of 1895, p. 130, § 5), further provides that

"Such tolls shall not exceed sixty cents per thousand feet, board measure, on logs, spars or other large timber, and reasonable compensation on all other products, as may be determined by the directors of said corporation; the amount of such logs and other products to be determined by the usual method of scaling, and such corporation shall have a lien upon all logs and other timber products handled for sluicing, sacking and driving thereof, to be enforced in any manner now or hereafter provided by law for the enforcement of lien for labor on logs."

This statute was amended in 1901 (Laws of 1901, p. 295, § 1), so as to authorize driving companies to establish, charge and collect reasonable and uniform tolls, not to ex-

ceed one dollar per thousand feet, board measure, on all logs, spars, or other large timber, and reasonable compensation on all other timber products for sluicing, sacking and driving same, and further provided that, in case any such corporation shall be engaged in booming and rafting logs and other timber so sluiced, sacked and driven, it might charge, collect and receive an additional sum not to exceed sixty cents per thousand feet for logs, spars and other large timber, and reasonable compensation on all other timber products may be charged for booming and rafting the same. In 1909, the statute was again amended in some particulars, leaving the provisions as to the adoption of uniform and reasonable rates and tolls, and the maximum rates that such driving and booming companies might charge, the same. We observe that the statutes in question require that the rates and tolls adopted "shall be reasonable and uniform." Without these requirements, the legislation would be open to objection of repugnance to the provisions of the Federal and state constitutions. No objections are here urged by appellant except by way of contention that, since under said statutes the service may be performed without the consent of the owner of the logs, it would clearly be an unconstitutional taking of his property to charge more for the improvement and service than the same is reasonably worth; that as to such excess the charge would be an illegal exaction and an unconstitutional taking. We have heretofore held that the performance of such service and the charge imposed therefor, although *in invitum*, was valid. *East Hoquiam Boom & Logging Co. v. Neeson*, 20 Wash. 142, 54 Pac. 1001.

There is no contention of any discrimination by respondent in fixing and charging its rates. The appellant maintains that the legislature not merely fixed maximum rates, but further provided that whatever tolls and rates such boom and driving companies did establish should not only be uniform and non-discriminating but reasonable, and that, therefore, the court had jurisdiction to inquire into the question of

rates. This is the sole question here involved. By this position, appellant maintains that, although the legislature established maximum rates for the services performed, and although it delegated to the trustees of the corporation who should improve such logging streams and render services to owners of logs in driving and booming them, authority and power within fixed limitations of fixing rates, the question was left open to examination by the courts as to whether rates so established and within the maximum fixed by law were in fact reasonable.

Appellant cites Beale and Wyman, Railroad Rate Regulation, § 1313, to this effect:

"To whatever body the power of fixing rates may be confided, it is the function of the regular courts to pass upon the reasonableness of the rates thus established; and the courts cannot be deprived of this power. The question of reasonableness cannot be so conclusively determined by the legislature of the state, or by regulations adopted under its authority, that the matter may not become the subject of judicial inquiry."

And cites *Reagan v. Farmers Loan & Trust Co.*, 154 U. S. 362, and *Chicago, M. & St. Paul R. Co. v. Minnesota*, 134 U. S. 418, to the effect that the question of the reasonableness of a rate charged for transportation by a railroad company is eminently a question for judicial investigation, requiring due process of law for its determination. But in the *Reagan* case the court say:

"The courts are not authorized to revise or change the body of rates imposed by a legislature or a commission; they do not determine whether one rate is preferable to another, or what under all circumstances would be fair and reasonable as between the carriers and the shippers; they do not engage in any mere administrative work; . . ."

Respondent, to the contrary, insists that the legislation in question is based upon the principle that the establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind. *Prentis v. Atlantic*

*Coast Line Co.*, 211 U. S. 210. It insists that what we are asked to do in the instant case is to make a rate for the individual case; that, if the appellant's view as to that end should be adopted, it would result in a court assuming to be a rate-making power in every individual case; courts have no such power; they can, in the absence of statutory regulation, sometimes prescribe such rules as to protect the public against unreasonable, arbitrary, and unjust rates; their duty, however, is generally ended when, after careful consideration of the facts of the particular case before them and after weighing the interests of the public and of the owners of the utility, determination is made whether the legislative or administrative authority has exceeded its constitutional power in making an order which, in practical application, deprives the owners of their property without just compensation. *Brooklyn Union Gas Co. v. New York*, 188 N. Y. 334, 81 N. E. 141, 117 Am. St. 868, 15 L. R. A. (N. S.) 763; *Brooklyn Union Gas Co. v. New York*, 115 App. Div. 69, 100 N. Y. Supp. 625; *Winsor Coal Co. v. Chicago & A. R. Co.*, 52 Fed. 716; *In re Arkansas Railroad Rates*, 168 Fed. 720; *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210, 224; *Honolulu R. T. Co. v. Hawaii*, 211 U. S. 282; *Montana, W. & S. R. Co. v. Morley*, 198 Fed. 991; *Western Union Tel. Co. v. Myatt*, 98 Fed. 335; *Detroit v. Detroit Citizens' St. R. Co.*, 184 U. S. 368; *Munn v. Illinois*, 94 U. S. 113; *Peik v. Chicago & N. W. R. Co.*, 94 U. S. 164; *Dow v. Beidelman*, 125 U. S. 680; *Chicago, B. & Q. R. Co. v. Iowa*, 94 U. S. 155; *Lake Shore & M. S. R. Co. v. Smith*, 173 U. S. 684; *Sands v. Manistee River Imp. Co.*, 123 U. S. 288; *Atchison, T. & S. F. R. Co. v. Denver & N. O. R. Co.*, 110 U. S. 667; *Pere Marquette Boom Co. v. Adams*, 44 Mich. 403, 6 N. W. 857; *State ex rel. Latshaw v. Board of Water & Light Com'rs of Duluth*, 105 Minn. 472, 117 N. W. 827, 127 Am. St. 581; *State ex rel. St. Louis v. Laclede Gas-Light Co.*, 102 Mo. 472, 14 S. W. 974, 15 S. W. 383, 22 Am. St. 789.

Respondent further urges, in effect, that where the legislature took cognizance of the matter of rates to be charged by driving and boom companies and assumed to prescribe a maximum rate therefor, they thereby said, in effect, that the maximum rate was reasonable, and that any rate within the maximum rate charged by the companies performing the services would be reasonable; in the absence of a judicial test whereby it should be determined that the rate established by the legislature was entirely arbitrary or confiscatory and beyond its province under the constitution, the courts may not further inquire into the matter; the question was foreclosed by legislative action. A similar case to the one here under discussion arose in the state of Wisconsin, cited in *Underwood Lumber Co. v. Pelican Boom Co.*, 76 Wis. 76, 45 N. W. 18. The court held that:

"It is competent for the state to authorize such parties to charge compensation at rates or within limitations fixed by the legislature, for the use of such improvements and for such services. Here the boom company was limited by the legislature in fixing its charges for such compensation, to a sum not exceeding fifty cents per thousand feet. We are constrained to think such amount was within the legislative discretion."

But the decision seems to be rested upon the facts shown in the case to sustain the charge of forty cents per thousand. The courts seem to hold with great unanimity that the maximum rates fixed by the legislature are conclusive and binding unless constitutional rights are invaded, and that, unless such rights are invaded, courts have no right to substitute their judgment as to what should or should not be a reasonable rate under the maximum established by the legislature. *Pingree v. Michigan Cent. R. Co.*, 118 Mich. 314, 76 N. W. 635, 53 L. R. A. 274; *Brooklyn Union Gas. Co. v. New York, Detroit v. Citizens' St. R. Co.*, and *Winsor Coal Co. v. Chicago & A. R. Co.*, supra; *Fisher v. New York Cent. & H. R. R. Co.*, 46 N. Y. 644; *People v. Budd*, 117 N. Y. 1, 22 N. E. 670, 682, 15 Am. St. 460, 5 L. R. A. 559.

The legislation here involved is not parallel to that class of rate legislation which fixes maximum rates which may be charged by public service concerns which provide and use, under public franchise, their own operating lines of carriage, and have frequently been found to fix and charge rates to the public without regard to uniformity or reasonableness. To prevent such abuses and imposition, it has become well established that legislation may reasonably prohibit discriminatory or unreasonable charges, and, in furtherance of that object, may establish maximum rates, provided they are of general effect and not confiscatory. Without such legislation to regulate rates by public service institutions, it has always been considered that, if a carrier attempted to charge a shipper an unreasonable sum, the courts had jurisdiction to inquire into the matter and to award to the shipper any sum exacted from him in excess of a reasonable charge; and, conversely, that if a legislative rate is not based upon a just and reasonable charge for the service rendered, but would render the service by the carrier unprofitable and therefore confiscatory, the carrier is entitled to relief from the courts. In the latter instance, if it is established that the plane or maximum of rates fixed legislatively is a just and equitable one, as between the carrier and the users, it stands; otherwise not. This is the rule as declared in the *Reagan* and other rate cases by the Federal supreme court and courts of the states generally. *St. Louis & S. F. R. Co. v. Gill*, 156 U. S. 649.

The cases herein referred to and others cited by respondent are, in nearly every instance, cases where the legislature established a maximum rate, or a level of maximum rates, which, upon judicial inquiry, were determined within the legislative power, and to have been constitutionally considered and established, and not unreasonable; and in some of them, that, under such maximum rates prescribed by legislation, any rate not in excess of the maximum would be deemed

reasonable; since primarily the question is a legislative and administrative question.

But statutes fixing one plane or maximum level of rates are unlike the statutes in question. Here the law-making power granted the right to improve and use natural highways, streams belonging to the state and the public. In consideration of such improvement for beneficial use, it further granted to the improvers the right to charge and collect tolls for their services to other concerns requiring the benefit of their improvements and services in and upon the streams. It gave to the improvers the primary right to fix the tolls therefor, first requiring that such tolls should be *reasonable* and uniform, and, next, in abundance of caution and restraint, that such tolls should not exceed certain sums, to be determined by the directors of the corporations so improving such streams. If we say that any such rate fixed by the board of directors of the improving corporation within the maximum prescribed by the legislature is *ipso facto* reasonable, we ignore the primary requirement that the rates or tolls charged *shall be* reasonable, and we allow to the boards of directors of such corporations not only the administrative power delegated to them to fix the rates or tolls, but also an arbitrary power to determine the reasonableness thereof, which the respondent would deny to the courts, and from which there is no appeal, and no recourse.

We cannot give our assent to that view. If the tolls charged are to be reasonable, somewhere lies the power to determine the reasonableness thereof. That the legislature intended to confer this power upon the improvers, after having granted them monopolistic or exclusive use of the public streams when improved by them, and the exclusive right to exact tolls even *in invitum* from the persons benefited thereby, and to impress liens upon and distrain the property thereunder, is most improbable. The monopoly of the business of the improver of a public stream is affected by a public interest. It is more peculiarly a public interest than that of most

other public carriers. The improver does not own its right of way. The right of way is a public highway belonging to the state. Its exclusive use has been granted by the state, but under certain expressed and implied restrictions. The legislature itself cannot override the paramount law, nor, in our opinion, has it attempted so to do in this legislation. It left for determination the question of the reasonableness of the tolls imposed by the logging and boom companies, by some authoritative body, manifestly not finally by the board of directors of the improvers of the streams.

"The question of reasonableness cannot be so conclusively determined by the legislature of the state, or by regulations adopted under its authority, that the matter may not become the subject of judicial inquiry." Beale and Wyman, Railroad Rate Regulation, § 1313.

See, also, *In re Janvrin*, 174 Mass. 514, 55 N. E. 381, 47 L. R. A. 319; *Chicago, M. & St. P. R. Co. v. Minnesota, Reagan v. Farmers' Loan & Trust Co.*, and *St. Louis & S. F. R. Co. v. Gill*, *supra*.

The legislature did not here adopt a fixed forward rule and inflexible standard of measurement of the reasonableness of the tolls exacted, so as to cut off inquiry into the fact of the reasonableness of tolls established and exacted by the boards of directors of such driving and boom companies. It doubtless considered the necessity of correcting and preventing abuses by prescription of maximum tolls beyond which the boom and driving companies could not lawfully charge in any case. And we assume that it found circumstances and conditions obviously precluding any definite and inflexible standard of such tolls which would fit all cases and be just and reasonable. To improve some rivers in this state for booming and driving logs would cost great sums, while to improve others for the same purpose would require comparatively small expenditure of money and labor. On some streams booming and driving is no doubt comparatively easy, while

on others it is very difficult.  The risks of the enterprise
probably vary greatly.  On one river a boom and driving
company may necessarily expend $10,000 in improving the
stream; while on another river another company might not
necessarily expend to exceed $1,000 to improve a stream for
booming and driving; yet both companies would be permitted
to exact the same tolls and enforce their payment as con-
clusively reasonable if within the maximum rates prescribed
by the legislature.  These are manifestly the reasons, and
excellent reasons, for the primary requirement that the tolls
charged and collected shall be reasonable for such service.
When, therefore, any such improver of a stream shall charge
a user its established tolls, it is necessary that the tolls
charged shall be shown *prima facie* reasonable in order to
support a valid lien and judgment.  If disputed, the reason-
ableness of the charge is a question for the court to deter-
mine, and that without regard to the burdens this will entail
or the difficulties of applying the law.

We come now to the consideration of the question of uni-
formity in applying rates for driving and booming as pre-
sented by respondent.  It is asserted that the conditions met
in improving and in driving and booming upon different
streams, "render it all the more necessary that such com-
panies be given, as they are given under the statute, certain
discretion with reference to the fixing of their tolls, in con-
nection with different operating conditions as they arise.
Otherwise a court or jury would fix in one case tolls that
would in no way be binding or conclusive in another, inter-
minable litigation would follow, confusion would result, and
different courts and juries would be fixing different rates and
tolls for the same service.  Manifestly, a litigant in one case
would not be concluded by the findings of a court and jury
in another, and the resulting confusion which would follow
is apparent."

We are not oblivious to these difficulties.  The trouble is
we must interpret the statute as we find it.  Its first require-

ment is that "all tolls charged and collected must be reasonable." In any event, if the rates charged and collected by such public service concerns were not reasonable, they should not be upheld by the courts. The boom and driving companies owe their existence and protection to the law. It may be that absolute parity and uniformity of the tolls charged and collected cannot be maintained. But the booming and driving companies cannot insist on uniformity of rates to the exclusion of reasonableness of rates. If they are entitled to the protection of the law and of the courts in charging and collecting *reasonable* tolls, and the users of their facilities are equally entitled to the protection of the law and the courts against unreasonable, and therefore illegal, exactions, the law can only be upheld and administered by determining the reasonableness of the charges. If one requirement of the law must go, that of uniformity, if by that is meant absolute uniformity, is the one that must fall. Theoretically, if reasonable charges are allowed in every case, a measure of at least rough uniformity must coincide.

We conclude, therefore, that the motions to strike appellant's affirmative answers should be denied, issues joined thereon, the cases tried on the facts, and decrees be entered according to the facts in issue.

The decrees of the court below are therefore reversed, and the causes are remanded for further proceedings in accordance with this opinion, with costs of appeal to appellants.

PARKER, ELLIS, and MAIN, JJ., concur.

CHADWICK, J. (concurring)—The state has an undoubted right, in proper cases, to fix a maximum rate to be charged for freights or fares, but a maximum rate of tolls and driving charges for rafting and booming logs in the streams of the state would violate the constitutional rights of the citizen. The waters of this state are public highways for rafting and booming logs, and, but for the statute, the owner of logs tributary to a stream would have a right to drive and boom

his own logs.   An act taking away the right to use these natural highways would be unconstitutional, unless the act is saved by a provision which the legislature was careful to insert, that is, that the charge shall be reasonable and not exceeding a certain maximum.

All of the cases relied on, excepting only *Underwood Lumber Co. v. Pelican Boom Co.*, 76 Wis. 76, 45 N. W. 18, are cases involving the power of a public service company to charge up to a maximum for the use of a utility created and controlled by it.   They are sound, but they do not fit the case at bar.   They sound in contract.   In such cases, the right of the legislature to fix maximum rates has not been denied.   For instance, a public service corporation undertakes to build a new highway or a new means of transportation—to cut through the trackless forests or to lay rails over the open plains.   In consideration of these things the state can say that all patrons may be charged any sum within a maximum.   Such company does not—and, from the nature of things, cannot be said to—assume a monopoly over a natural highway that was common to all the people having occasion to use it before, and which, but for some statute, would still be open to their free and unobstructed use.

In the *Underwood* case, two questions were involved: First, had the legislature the power to fix a maximum rate of tolls, and second, whether, in that particular instance, the rate which the company had fixed was reasonable.   The court held that it was within the power of the legislature to fix a limitation of fifty cents per thousand feet as a maximum charge, and, in so far as a maximum was concerned, it was a matter of legislative discretion.   The company had fixed a rate of forty cents per thousand, asserting it to be a reasonable rate.   The lumber company contested this rate, asserting that it was unreasonable.   The court tried out the issue of fact and laid down a rule for determining what would be a reasonable rate within the maximum.   After stating the contentions of the plaintiff and the defendant, the court, upon

the authority of *Pere Marquette Boom Co. v. Adams*, 44 Mich. 403, 6 N. W. 857, said:

"It seems to us very clear that the value of all property and rights of property necessarily employed, and all labor or services necessarily employed, and all disbursements necessarily made, and all expenses necessarily incurred, by the boom company in receiving, sorting, storing, and delivering logs and timber, should be considered in determining what is a reasonable compensation for such services."

And further, after restating its finding that a fifty cent maximum toll could not be attacked as an abuse of legislative discretion, continues:

"The boom company fixed the amount at forty cents per thousand. It seems to have been reasonable."

It will thus be seen that the court not only found in the "mass of evidence in this case" what was a reasonable rate, but laid down a rule for finding a reasonable rate in all future cases.

Although confidently relied on, the case does not uphold the decrees of the lower court. As I read it, it sustains the position of the appellant in this case, both on the law and the fact. *Brooklyn Union Gas Co. v. New York*, 188 N. Y. 334, 81 N. E. 141, 117 Am. St. 868, 15 L. R. A. (N. S.) 763, is the only case cited in which the power of courts to inquire into the reasonableness of a rate below the maximum was in issue. The statute in that case did not require that the rate should be reasonable and then set a maximum, but provided only that the charges should not exceed a certain amount.

It seems to me that the considerations to which I have adverted must have occurred to the legislature at the time it defined the rights of logging and boom companies and limited the charges and tolls to be exacted for their services. Otherwise it would have said in plain words what respondent contends for; that is, that any rate not exceeding the maximum was a fair charge.

If our construction of the statute is not sound, the word "reasonable" is redundant. To reject it would violate a well settled canon of construction. As I view the law, it is possible to give force and meaning to every word of the statute, whereas respondent, to sustain its reasoning, must annihilate the very words which were intended to save the statute from attack upon constitutional grounds.

Moreover, respondent has itself construed the statute, and by its own act should now be held to admit that it can charge no more than a reasonable rate, whatever the maximum fixed by statute may be. When it fixed sixty-five cents for driving and forty cents for booming, both being within the maximum, it would seem that it recognized that its power to take tolls was limited to a reasonable sum within the maximum. It is no answer to this proposition to say that a boom and driving company may grant its favors at will within the limit of its power to charge for services. Private rights do not hang upon a thread so slender; especially when the power to maintain a compulsory service and charge at all is dependent upon the will of the people themselves. No citizen should be made dependent in the assertion of his rights upon the benevolent impulses of a public service corporation. It has not always been a dependable thing. On the contrary, the rights of such corporations should be strictly defined by law and their charges should always be open to inquiry, unless, indeed, the legislature has fixed a maximum that is not offensive to some provision of the constitution.

FULLERTON, J.—I concur for the reasons stated by Judge Chadwick.

MORRIS, C. J., and MOUNT, J., dissent.

BAUSMAN, J., took no part.