MORRIS v. BRADLEY FERTILIZER CO.

(Circuit Court of Appeals, Third Circuit. November 1, 1894.)

No. 1.

1. SALE OF CHATTEL—IMPLIED WARRANTY OF FITNESS.

Defendant telegraphed and wrote plaintiff, requesting it to ship a G. mill, of same size and kind as one sold to the P. Salt Co., stating that he wanted the mill for grinding limestone. Plaintiff shipped a G. mill, of the size and kind described, which proved unsuccessful in defendant's business, as he wished to grind wet limestone, for which the mill was not adapted. In a letter written subsequently, defendant told plaintiff that one E. (not connected with plaintiff) had recommended the mill, and he (defendant) thought he would try it. *Held*, that these facts failed to show that the purpose for which the article ordered was to be used was disclosed to the seller, and reliance placed on his judgment, so as to give rise to an implied warranty of fitness.

2. SAME—STATEMENT IN CATALOGUE.

Two years before the sale of the mill, plaintiff's agent had given defendant a catalogue advertising the G. mill, which stated that it would grind substances "as hard as flint and as soft as lime. * * * It will grind wet or dry,"—but which showed, by other passages that "wet or dry" referred to alternative constructions or modes of operation of the mill, not to the nature of the substance ground. *Held*, that this statement was not misleading as to the fitness of the mill for grinding wet limestone, but that, if the catalogue had expressly stated it to be fit, and the mill been bought in reliance upon such statement, it would have constituted an express, not an implied, warranty.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action by the Bradley Fertilizer Company, a corporation created under the laws of Massachusetts, against A. G. Morris, a citizen of Pennsylvania, to recover $2,000 and interest, being the amount due for a grinding mill purchased by defendant from the plaintiff. A verdict was rendered for plaintiff, and defendant's motion for a new trial denied, whereupon defendant brought error.

C. Berkley Taylor and Wm. H. Addicks, for plaintiff in error.

Leoni Melick, for defendant in error.

Before SHIRAS, Circuit Justice, and ACHESON and DALLAS, Circuit Judges.

DALLAS, Circuit Judge. "If a man buy an article for a particular purpose, made known to the seller at the time of the contract, and rely upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose." Benj. Sales (2d Am. Ed.) § 661. Where, however, a positive and unqualified order for a specific article is given, this rule is not applicable. In such cases there is an implied condition, according to the English authorities, or, as substantially the same thing is usually called by our courts, an implied warranty, that the article supplied shall correspond with the designation, description, or exemplar, as the case may be, by which the thing purchased had been defined. But the seller's undertaking does not extend beyond this guaranty of identity. There is no implied collateral agreement that the article sold is fit for the use for which the buyer designs it. He buys on his own judgment, and if that turns out to be at fault he must himself bear the burden of his disappointment. These principles are well settled and do not appear to be challenged, but it is contended that the circuit court erred in its application of them to the facts which were before it. The contract between these parties was for the purchase and sale of a "Griffin mill," and such a mill was delivered. The action in the court below was for recovery of the agreed price, and the defense was that the mill would not do the work for which it was wanted. The business of the defendant below was the grinding of limestone without first drying it. Consequently, he required a mill which would grind it when in a wet condition, and as the mill in question would not do this it was useless to him. Is the seller liable for the resultant loss? If he is, as fraud is not charged, and no express warranty is alleged, it must be by reason of the existence of an implied warranty of fitness, which, as we have seen, cannot exist unless it appears—First, that the purpose for which the mill was bought was sufficiently made known to the seller; and, second, that his judgment as to its suitability for that purpose was relied upon. This brings us to the investigation of the evidence by which these points must be determined, and upon which we base our decision.

The defendant below testified that, about two years before he bought the mill, Mr. Griffin (acting, it may be assumed, for the plaintiff) gave him a catalogue in which it was stated, with regard to the Griffin mill: "It will grind equally well substances as hard as flint and as soft as lime. * * * It will grind wet or dry." But this catalogue was in evidence, and the defendant further testified that he had read it,—"read it over,"—and it is made quite manifest by other passages which it contains that the statement as to grinding either wet or dry does not relate to the substances to be ground, but to alternative constructions or modes of operation of the machine itself. For instance, it is said, "In wet grinding the water is in-

troduced with the feed, and when the mill is running the water takes the same motion as the material in the dry mill," etc. The statement of which the defendant below complains is therefore not a misleading one, if read—as of course it should be—in connection with other parts of the paper in which it occurs. If, however, this catalogue had plainly asserted that the Griffin mill would grind wet limestone, and if it had clearly appeared that the purchase was made with reference to that assertion, the defendant below would have proved too much, for the warranty shown, if any, would be an express, and not an implied, one; and the brief submitted on his behalf rightly concedes that the charge of the trial judge upon the subject of express warranties was unobjectionable. Moreover, the defendant below, though he may, as he testified, have thought, from his perusal of this catalogue, that the Griffin mill would answer his purpose, certainly did not, as will appear further on, rely upon its statements in giving his order of two years later. The correspondence which created the contract is set forth in the record as follows:

"[Business Heading.]

"Tyrone, Pa., September 24, 1892.

"Bradley Fertilizer Company, Boston, Mass.—Gentlemen: I have just wired you as follows: 'Have you Griffin mill, same size sold the Pennsylvania Salt Co. (only steel), that you could at once, if ordered? Answer.' This I now confirm. My ground limestone works at Bellefonte, Pa., burnt down, and I will have to get a new mill for grinding limestone, if you have on hand a mill the same size and kind as you sold the Penn'a Salt Mfg. Co., Natrona, Pa., only I want it steel. Wire me at once price, and say if you can ship at once, if ordered.

"Yours, truly,                                        A. G. Morris. R."

"[Business Heading.]

"Tyrone, Pa., September 27, 1892.

"Messrs. Bradley Fertilizer Company, No. 27 Kilby St., Boston, Mass.—Gentlemen: I am in receipt of your telegram saying you can ship mill any day, and have wired you as follows: 'Ship most improved Griffin mill for grinding limestone. Will write.' I now confirm this. Please ship at once. I want the best and latest you have for making fine-ground limestone. My mill burnt down last week, and it is necessary for me to rebuild at once; and I also want you to send a man at once, with plans for the foundation, etc., so I can have everything ready as soon as the mill arrives here. Please do not delay shipment, and let me know on receipt of letter when shipment will be made, and man sent. Ship to Bellefonte, Centre county, Penn'a, care of B. C. R. R.

"Yours, truly,                                        A. G. Morris. R."
"(Dictated.)"

These letters, and the telegrams they confirmed, show that a specific article—a Griffin mill—was ordered, and that it was to be of the size and kind of that of the Pennsylvania Salt Manufacturing Company, except only that it was to be of steel; and it is not denied that the article supplied was a Griffin mill, and that it conformed to exemplar and description. It is insisted, however, that a warranty of fitness for grinding wet limestone should be implied, because it was stated that the mill was wanted "for grinding limestone," and "for making fine-ground limestone"; but this position is not tenable, for reasons heretofore indicated, inasmuch as these statements did not disclose a material feature of the particular purpose for which the mill was required, and the general purport of

the letters in which they are contained shows that the buyer bought on his own judgment, and neither sought nor relied upon that of the seller. The contractual letters and telegrams did not inform the seller that the limestone which the buyer used was wet limestone, nor was any evidence given or offered from which, in our opinion, effective knowledge of that fact could be ascribed to him. The buyer, in the first letter which he wrote to the seller after finding that the mill would not suit him (October 20, 1892), made no complaint of the seller. He treated the trial which had been made as an experiment of his own. He said: "It don't appear to be a success. * * * The stuff appears to be too damp and heavy," and in his next letter (November 23, 1892) he offered to pay freight, and for the seller's trouble and expense, if the latter would dispose of the mill to some other customer. Not until January 11, 1893, was there any intimation that the buyer would seek to hold the seller responsible for the mistake which had been made, and the claim then suggested was put upon the ground that the letters of purchase had referred to "limestone," which, as has been shown, is not legally adequate for the support of such a claim, and also upon a statement said to have been made by a representative of the seller, "that he did not think the mill would do the work," and the buyer's reply, that, "if it would not do, it was not worth anything" to him. But, as this is admitted to have taken place after the sale had been completed and perfected, it could not affect the contract. A warranty is, in general, a collateral undertaking forming part of the transaction of sale. When a distinct subsequent warranty is alleged, it must be more satisfactorily established than by evidence of such a conversation as is here relied on, and must be supported by a new consideration, which, as to the warranty supposed to be deducible from the remark and reply which have been quoted, is wholly lacking.

It has now, we think, been made evident that, as to an essential particular, the purpose for which this mill was wanted was not made known to the seller at the time of the purchase, and that at no subsequent time was any undertaking of warranty assumed, and it seems to be at least equally apparent that the judgment of the seller was not relied on by the buyer. The latter knew of the mill belonging to the Pennsylvania Salt Company. He believed that one of the same size and kind would suit him. "Mr. Ewer" (not connected with the seller) "recommended it," and he (the defendant below) "thought he would try it." This is, in substance, what he himself said in letters written after he had tried the mill, and before this controversy arose, and the case made on the trial is to the same effect. Therefore, we repeat that, even if full disclosure of the purpose for which the mill was intended had been made, an implied warranty of fitness would not have resulted, because of the absence of a further necessary constituent of such warranty,—reliance on the judgment of the seller.

The foregoing discussion of the fundamental questions involved in this case renders it unnecessary for us to deal in detail with the several assignments of error. They have all been considered, but none of them is sustained. The judgment is affirmed, with costs.