STANDARD UNDERGROUND CABLE CO. v. DENVER CONSOL. ELECTRIC CO.

(Circuit Court of Appeals, Third Circuit. October 26, 1896.)

No. 3, September Term, 1896.

1. TRIAL—INSTRUCTIONS—PROVINCE OF JURY.
    Where sufficient evidence has been adduced upon which a finding may reasonably be based, the court cannot withdraw the issue from the jury, but must require them to ascertain from the evidence the truth as to the facts.

2. SALE—COLLATERAL WARRANTY.
    Where a warranty is part of a transaction of sale, no separate consideration is necessary to support it.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

The charge of the court was, in part, as follows:

This is a suit brought by the Denver Consolidated Electric Company, a corporation of the state of Colorado, against the Standard Underground Cable Company, a corporation of the state of Pennsylvania, to recover damages for the breach of an alleged guaranty or warranty of the capacity and working of certain cable for carrying an electric current underground. The plaintiff, the Denver Consolidated Electric Company, was formed in the year 1889 by the consolidation of two previously existing corporations in the state of Colorado, namely, the Colorado Electric Company and the Denver Light, Heat & Power Company. The Denver Light, Heat & Power Company was organized on May 7, 1887; the Colorado Electric Company, some years earlier. The plaintiff company, the consolidated corporation, succeeded to all the rights of each of its constituent companies. The cause of action here grows out of an alleged contract between the Denver Light, Heat & Power Company and the defendant, the Standard Underground Cable Company. The first question in the case is whether the alleged contract between the defendant company and the Denver Light, Heat & Power Company was ever entered into. The plaintiff alleges that that contract was entered into. This the defendant denies. Before the incorporation of the Denver Light, Heat & Power Company, the defendant company addressed a letter to Edward Rollins, as follows:

"Pittsburgh, Pennsylvania, April 5th, 1887.

"Edward Rollins, Esq., Denver, Colorado—Dear Sir: Referring to our several conversations had within the past few days regarding our lead cover and underground cable for electric light purposes, I beg to quote as follows: [And here ensues a list of cables, numbered from 0000 to 18, with the prices. Then, after quoting discounts, the letter proceeds:] The conductors are made of the best lake copper, and are guarantied to be from 96 to 98 per cent. pure copper; from 0000 to No. 6, inclusive, being made of four strands, and from No. 7 to No. 18, inclusive, being solid wire, all being covered with our heaviest insulation and heaviest lead casing. Should you decide to order these cables for your underground electric work, we will guaranty the same to carry your electric current to at least 2,500 volts, and we will give you a guaranty of the perfect working of the cable, barring all mechanical injuries, for a period of five years. Regarding the question of our reels, we will make special ones for the shipment of these cables, and charge you only the cost thereof, keeping it as light as possible. In guaranteeing the cable, we reserve the right to send a man to superintend the laying of the same, we charging you for his services."

The plaintiff alleges, and claims to have produced evidence tending to show, that prior to the date of the letter some verbal communications with respect to underground cables took place between Mr. Rollins and the defendant company, and that Mr. Rollins at that time was acting for the projectors, who afterwards became the incorporators, of the Denver Light, Heat & Power Company. The defendant alleges, and claims to have produced evidence tending to show, that the officials of the defendant company who had been in communication with Mr. Rollins had no knowledge whatever that he represented other persons, or was acting for any one but himself, and, further, that the proposition contained in the letter of April 5, 1887, was made exclusively to Mr. Rollins individually.

On the 8th of July, 1887, the Colorado Electric Company sent to the defendant company a telegraphic order for cable, as follows:

"Denver, July 8, 1887.

"To the Standard Underground Cable Co., Pittsburgh, Pa.: Ship in car lots twenty-four thousand feet number naught, ninety-four thousand feet number one, seven thousand feet number two, seven thousand feet number three, three thousand feet number four, all to be duplex.

"Colorado Electric Company."

This order was filled by the defendant company, and bills for the cable were made out against, and transmitted to, the Colorado Electric Company. These bills were afterwards paid by the Denver Light, Heat & Power Company in its drafts on New York City.

It appears that the cable was laid in the summer and fall of 1887. The defendant company, having reserved the right to superintend the laying of the cables, sent a man for that purpose. This man was recalled while the work was in progress, because of charges of incompetency, and the work was completed without defendant's supervision. On January 11th the Denver Light, Heat & Power Company addressed a letter to the defendant inquiring the effect of the recall upon their guaranty. The answer of the defendant, through its vice president, was that the recall of the superintendent would not affect their agreement, but added, "Of course, it is understood that mechanical injuries are not warranted against, or any defect not attributable to the cable itself." The position of the plaintiff company is that, although the cable in question was ordered by the Colorado Electric Company, yet it was actually purchased by the Denver Light, Heat & Power Company, under and on the faith of the offer made in the letter of April 5, 1887, addressed to Edward Rollins. This the defend-

ant company denies. The defendant company maintains that it had no contractual relations with the Denver Light, Heat & Power Company, that it did not know that company in the transaction, and that it sold the cable to the Colorado Electric Company simply upon the order of that company, without reference to the proposition that had been made to Edward Rollins on the 5th of April, 1887.

The assignments of error were as follows:

First. The court erred in its answer to the defendant's first point, which point and answer are as follows: "The letter of April 15, 1887, addressed by the Standard Underground Cable Company to E. W. Rollins was not a warranty, but only an offer to warrant. It gave rise to no legal obligation, unless accepted, and it could be accepted only by E. W. Rollins himself. Answer. The court declines to affirm this point as a whole. The matter of acceptance is sufficiently covered by the general charge."

Second. The court erred in its answer to the defendant's second point, which point and answer are as follows: "The plaintiff has failed to establish by the evidence any contract of warranty between the Standard Underground Cable Company and the Denver Light, Heat & Power Company. Answer. This point is declined, and the question is referred to the jury as one of fact, under the instructions of the general charge."

Third. The court erred in its answer to the defendant's third point, which point and answer are as follows: "The plaintiff has failed to establish by the evidence any purchase of cable by the Denver Light, Heat & Power Company from the Standard Underground Cable Company, but has established such purchase by the Colorado Electric Company, a separate and distinct corporation from the Denver Light, Heat & Power Company. Answer. This point is declined, and the question is referred to the jury as one of fact, under the instructions of the general charge."

Fourth. The court erred in its answer to the defendant's fourth point, which point and answer are as follows: "Even if a warranty existed by the Standard Underground Cable Company in favor of the Denver Light, Heat & Power Company, the defendant company, under the evidence, is not liable. Such warranty is void for want of consideration. Answer. This point is declined."

Fifth. The court erred in its answer to the defendant's fifth point, which point and answer are as follows: "Even if a contract of warranty existed between the defendant company and the Denver Light, Heat & Power Company, it was avoided by the latter company's election to lay the line without the defendant company's supervision; and such avoidance could not be waived by defendant company after the completion of the contract, without a new consideration, of which there is no evidence. Answer. This point is declined, in view of the evidence touching the defendant company's contemporaneous acquiescence."

Sixth. The court erred in its answer to the defendant's sixth point, which point and answer are as follows: "Under all the evidence, the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant. Answer. This point is declined."

John Dalzell, for plaintiff in error.

I. N. Stevens and John S. Ferguson, for defendant in error.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges.

DALLAS, Circuit Judge. The plaintiff below (defendant in error) sued to recover for breach of an alleged warranty by defendant respecting certain merchandise alleged to have been sold by the defendant to the plaintiff. The defense mainly relied upon was alternatively presented. It was that the plaintiff was a stranger to the contract of sale to which the warranty was claimed to have been col-

lateral, or that, even if the plaintiff was a party to the sale, yet it could not recover because no contract of warranty was in fact coupled with it. The issues thus arising were admittedly for determination by the jury, unless, as the defendant insisted, no evidence had been adduced upon which a finding thereon in favor of the plaintiff could reasonably be based. The trial judge, being of opinion that there was such evidence respecting both questions, submitted them, under properly guarded instructions, to the jury, and it is this action of the court which is complained of in the first three specifications of error. The circumstances of the case were peculiar, and the evidence, oral and documentary, as to warranty, and as to who were the real parties to the sale, and to the warranty if there was a warranty, was somewhat complicated; but that there was sufficient evidence upon these issues to support a verdict for the plaintiff our examination of the record has fully satisfied us. This being so, it follows that a refusal to allow the jury to pass upon them could not have been justified, and that the learned judge was therefore right in declining to affirm the first three points of the defendant below, and in requiring the jury to ascertain from the evidence the truth as to the facts which by those points was assumed to have been conclusively established in accordance with the defendant's contention.

The fourth specification rests upon the postulate that there was no contract of sale between these parties, and if this hypothesis could be accepted the question presented would be a serious one, for we do not doubt that a warranty, if independently given, and not as collateral to a contract of sale, does require a distinctive consideration for its support. But where the warranty shown is, as in this case, part of a transaction of sale, no separate consideration is necessary. Morris v. Fertilizer Co., 12 C. C. A. 34, 64 Fed. 55.

The fifth specification of error is not sustained. The evidence of the defendant's acquiescence in the laying of the electric line in question without the defendant's supervision, precluded the court from charging as was requested by the fifth point submitted on behalf of the defendant.

The sixth and last specification has been sufficiently disposed of by what has been said with especial reference to those which precede it. The judgment is affirmed.