[No. 14390.  Department Two.  March 2, 1918.]

WISHKAH BOOM COMPANY, *Appellant*, v. GREENWOOD
TIMBER COMPANY, *Respondent*.[1]

APPEAL — RECORD — ABSTRACTS — DISMISSAL.  Under Rem. Code,
§ 1730-6, insufficiency of the abstract of the evidence is not ground
for dismissing an appeal, but only for motion to amend it.

APPEAL—RECORD—STATEMENT OF FACTS—EQUITY.  In an equity
case, it is discretionary to make findings of fact, and where none
are made, the statement of facts will not be struck out for failure
to except to the findings.

LOGS AND LOGGING—DRIVING AND BOOMING—LIENS—RATES.  In an
action to foreclose liens upon logs for driving and booming, the
court has no power to fix rates, but only to determine whether a
rate charged is reasonable.

SAME—DRIVING AND BOOMING—LIEN—DECREE.  In an action to
foreclose liens upon logs for driving and booming, a decree allow-
ing for foreclosure for fees, including "delivery," must be construed
to mean delivery at the boom.

SAME—DRIVING AND BOOMING—LIENS—FORECLOSURE.  An action
to foreclose liens for booming and driving logs being an equity
case, it is not error to refuse to make findings of fact, nor to sep-
arately fix the rate for driving and the rate for booming; especially
if the aggregate rate fixed was within the evidence and the plead-
ings.

SAME—DRIVING AND BOOMING—RATES — EVIDENCE — SUFFICIENCY.
In an action to foreclose liens for booming and driving logs, find-
ings in a certain amount will not be set aside when supported by
the testimony of an expert whose methods were commendable and
who showed the utmost fairness to the parties.

SAME—RATES—BASIS.  In an action to foreclose liens for boom-
ing and driving charges, the proper basis for fixing the rates is the
present fair cash value of the public utility, which its reproduction
cost, minus its depreciation, if any.

Appeal from judgments of the superior court for
Grays Harbor county, French, J., entered March 16,
1917, in favor of the defendant, in consolidated actions
to foreclose liens upon logs, tried to the court.  Af-
firmed.

[1]Reported in 171 Pac. 234.

*Harry E. Wilson* and *John C. Hogan,* for appellant.
*W. H. Abel* and *Donworth & Todd,* for respondent.

HOLCOMB, J.—This case was before the court on a former appeal to determine the question of whether or not the courts could pass upon the reasonableness of the rates of booming and driving companies. *Wishkah Boom Co. v. Greenwood Timber Co.,* 88 Wash. 568, 153 Pac. 367.

This is a consolidation of two actions brought to enforce two liens for driving and booming logs on the Wishkah river for respondent. The cause of action arose in 1913, and the logs were both driven and boomed by appellant on the west branch of the Wishkah river.

Appellant alleged that the rate and charge of sixty-five cents per thousand feet board measure for driving logs from the place on the Wishkah river from which respondent's logs were driven, and forty cents per thousand feet board measure for catching, holding, sorting, and rafting the logs in the boom of appellant on tide water in the Wishkah river, making a total charge on the logs of $1.05 per thousand feet board measure for driving, catching, sorting, rafting, and booming, were reasonable and proper rates and charges. Respondent answered and denied that the rates charged and demanded were reasonable, and affirmatively alleged that thirty-five cents per thousand feet board measure is a reasonable charging rate for all driving services performed by appellant for respondent, and that thirty cents per thousand feet board measure is a reasonable charging rate for all booming services so performed; at which rates respondent tendered sums aggregating the total charge affirmatively alleged to be due, and later, by permission of the court, deposited the money in the registry of the court to take the place of the lien. Upon the remanding of the case, issue was

joined by appellant's replying to the affirmative allegations of respondent, and the case proceeded to trial. At the trial, appellant conceded that thirty cents was a reasonable sum to be allowed it for its booming charges, thus disposing of that issue in favor of the contention of respondent. Later, during the progress of the trial, respondent asked leave to amend its answer by alleging that twenty cents per thousand feet for booming would be a reasonable rate. The court denied this application, and no exception to the ruling of the court was taken by respondent.

The trial was had largely upon the testimony of expert witnesses and documentary evidence. One Johnson, an expert accountant, and one Burroughs, an expert engineer and rate expert, testified in behalf of appellant, and one Torrey, an expert accountant, and Gray, an engineer and expert on rate matters, on behalf of respondent. These witnesses apparently went deeply into the business and operations of appellant in order to enable them to intelligently testify. Other witnesses also testified to other matters involved. The court by memorandum decision held that:

"Considering the value of plaintiff's property, what would be a fair return on the investment, the costs and expenses, and maintenance and operation, and considering also the vast amount of timber which must necessarily be marketed by means of driving it down the Wishkah river, the court is of the opinion that 75 cents per thousand feet B. M. would be a reasonable charge for timber which the plaintiff may drive and boom, and therefore finds that plaintiff may have a lien in the amount of 75 cents per thousand."

It will be seen that the court lumped the driving and booming charges together in the sum of seventy-five cents per thousand feet board measure.

Appellant made a written request to the court to make and enter findings of fact and conclusions of law,

and particularly to make separate findings as to the rate allowed for booming and as to the rate allowed for driving.  This request was denied by the court and an exception allowed.  The boom company submitted to the court requested findings of fact and conclusions of law, which the court denied.

At the outset we are met by a motion on the part of respondent to dismiss the appeal because appellant has failed to file an abstract in accordance with the statutes and rules of court.  The statement of facts in the case cover 595 pages.  Appellant introduced in evidence fourteen exhibits, many of them very voluminous.  Respondent introduced in evidence sixteen exhibits, many of which are voluminous.  The abstract of the evidence covers only fourteen pages, of which half are devoted to abstracting the testimony on direct examination of the two experts of appellant.  The cross-examination of these two experts requires nearly one hundred pages in the statement of facts and is abstracted in about three lines.  The testimony of respondent's experts is abstracted in about forty-five lines of typewriting, and their reports are not abstracted at all.  This, however, is a very important case, and the writer of the opinion felt it necessary to examine with care the written summaries in full of the experts on both sides, and much of the testimony of the parties as reported.  It is doubtful whether an abstract could have been made which would have been satisfactory, unless it had been prepared in almost the same volume as the statement of facts and exhibits.  After the passage of the statute amending the law regarding abstracts of record in 1915 (Laws of 1915, p. 302, § 6; Rem. Code, § 1730-6), this court held, in *Kranzusch v. Trustee Co.*, 93 Wash. 629, 161 Pac. 492, that insufficiency of the abstract of the evidence or of its index is ground not for the dismissal of the appeal, but only for a motion to amend the

abstract upon terms.  The motion is therefore denied.

Respondent moves also to strike the statement of facts and affirm the judgment for the reason that no exceptions were taken to the findings of the court upon which the judgment was based and the question presented by assignments of error relates only to questions of fact.  This being an equity case, no findings of fact and conclusions of law were necessary, and it was a matter of discretion with the trial court whether he made any.  He made none, and the memorandum decision cannot be considered as a finding of fact.  This motion is also denied.

While this is a rate case, it must be understood that the courts cannot make rates.  Their power is limited to the determination of whether or not rates attempted to be exacted in a given case are reasonable rates.  The case is analogous to an inquiry before the interstate commerce commission under the original act creating that body whereby it was given no power to fix rates.  Upon specific complaint it could determine whether a particular rate or schedule of rates was reasonable, and the courts could only pass upon the validity of the methods used by the interstate commerce commission and the results reached.

I.  The first complaint is that the court erred in making its judgment include delivery of the logs.  Under the terms of the decree allowing a foreclosure of the liens and judgment for seventy-five cents per thousand feet board measure to include ''all services performed by the plaintiff in driving, booming, handling, and delivering said logs,'' it is obvious that the word ''delivering'' was meant only as delivering at appellant's boom, not delivering to some other point to be designated by respondent.  At any rate, such error, if error it was, may be obviated by modifying the decree

to include the words "at its boom" after the word "delivering."

II.    The second claim is that the court erred in refusing plaintiff's request to make and enter findings of fact and conclusions of law in the case, and in refusing to separately find or state the rates allowed by the court for booming and for driving. It was not error to refuse to make findings of fact and conclusions of law. It is well settled in this state that, in an equity case, this is a matter of discretion with the trial court. Nor was there any necessity for the court to separately find and state the rates allowed by the court for booming and for driving. While this is a rate case and may be used as a precedent in the future by either party, it is not a case where the rates can be firmly established for the future. The appellant, in its complaint, aggregated its total charges and aggregated them in its liens, alleging in the complaint that the total reasonable charges were $1.05 for both the driving and the booming operations. The court may have aggregated them merely for brevity, and it may have considered that the thirty-cent rate was admitted by the affirmative pleadings of respondent and conceded by appellant for booming, and that the forty-five cent rate was a reasonable rate for the driving. That not to exceed thirty cents for the booming was admitted by respondent and conceded by appellant, and therefore uncontrovertibly established as the maximum which could be charged for booming, is seen from preceding statements herein. But all of the evidence in the case was before the court, and whether or not the court permitted respondent to amend its pleading so as to allege that not to exceed twenty cents per thousand feet board measure was a reasonable rate for booming, since there is evidence in the case tending to justify that contention, the court may have found that twenty or twenty-five cents

per thousand feet board measure was a reasonable rate
for booming and the remainder for driving, consider-
ing the pleading amended to conform to the evidence.
Its uncertainty, however, is not open to attack, because
the combined rate or total, if segregated into portions,
is, in any event, within the evidence and within the
pleadings.

III.   The third assignment of error is the one on
which appellant mainly relies.   The question discussed
is whether the rate of sixty-five cents, alleged and
claimed for driving, and thirty cents, conceded and
claimed for booming, should have been sustained.   It
is evident that the court relied principally upon the evi-
dence of the experts for respondent, and while the re-
ports of appellant's experts are elaborate and go very
largely into minutest details, there is considerable in-
dication that appellant's experts carry inflated values
into their methods of valuation, and exorbitant ex-
penses and charges in their maintenance, reproducing
and operating charges.   Some, in fact, are apparently
duplicated.   The very admirable report of Mr. Gray,
showing his methods of arriving at his conclusions, is
so precise, concise and simple in its premises, methods,
and conclusions that any one, whether an expert or not,
can quickly understand and appreciate them.   He also
displayed the utmost fairness toward the appellant and
gave it considerable advantage in his premises and de-
ductions, such as, that it was operating an expensive
plant for a limited term of activities until the sources
of business would be exhausted, and was not such a
permanent plant as a railroad or a street railway.   His
estimates and his testimony throughout show the fair-
ness of this consideration toward the appellant, and
yet his conclusions would justify a finding of a ma-
terially lower rate at the present time than was ap-

parently at least made by the court for booming, and a slightly lower rate for driving. A complete analysis of the methods and figures of the experts would be interesting or important to no one but the parties. We have examined them, and the trial court heard and saw the witnesses and found a total rate which seems from the evidence to be a very reasonable rate. We may say in passing that, under the evidence, a driving rate of forty-five cents per thousand feet board measure and thirty cents per thousand feet board measure for booming and rafting the logs, if desirable to separate the rates, seem to be amply sufficient and reasonable rates. The appellant, however, never separated its driving and booming operations. It did, as shown by the manner of paying its superintendent, charge one-fourth of the salary of its superintendent per month to driving operations and three-fourths to booming. This was substantially the method adopted as approximately proper by expert Gray. It is shown, also, that, from 1902 to 1908, a joint rate of sixty cents for driving, booming, and towing was in effect as fixed by appellant, and from February, 1909, to May, 1910, a driving rate of thirty-five cents and a booming rate of forty cents. It is also shown incidentally that much business on the stream in question was lost the preceding year because of the rates charged by appellant, loggers operating on the stream not being willing to meet the rates. On other similar streams in that vicinity, where the conditions are much the same or even more difficult and the driving longer, lower rates are charged than were here allowed by the court.

Much is said by counsel for appellant, and was said by their expert as to the proper rating base. Appellant contends that the fair value of the depreciated value of the property devoted by the boom company to

its booming and driving operations, as adopted by respondent's expert, was not a proper basis upon which to figure its rates, and contends that the cost of reproduction new was to be taken as the rating base, and that it was entitled to charge rates that would produce a fair return upon all its property·at the cost if purchased new now. There is no statute adopting the basis of valuation of such public utility. We are of the opinion that the proper rating base of any such public utility is the present fair cash value, which is its reproduction cost minus its depreciation, if any. *Knoxville v. Knoxville Water Co.,* 212 U. S. 1; *Minnesota Rate Cases,* 230 U. S. 352, 48 L. R. A. (N. S.) 1151; *Pioneer Tel. & Tel. Co. v. Westenhaver,* 29 Okl. 429, 118 Pac. 354, 38 L. R. A. (N. S.) 1209.

Finding nothing in the record which would justify reversal, the decrees are affirmed.

ELLIS, C. J., CHADWICK, MOUNT, and MORRIS, JJ., concur.