[No. 15462.  Department Two.  January 27, 1920.]

## PETER HAUSKEN, *Respondent,* v. HODSON-FEENAUGHTY COMPANY, *Appellant.*[1]

APPEAL (322-1)—RECORD—ABSTRACTS—DISMISSAL.  Insufficiency of the abstract is not ground for motion to strike it and to dismiss the appeal.

APPEAL (418)—REVIEW—FINDINGS.  It cannot be said that findings are not supported where the testimony was in direct conflict, the court heard and saw the witnesses, and the probabilities were no stronger in favor of one than the other.

SALES (105)—IMPLIED WARRANTY—BREACH—DAMAGES.  The sale of a tractor without inspection or test, with full knowledge of the particular purposes for which it was desired, impliedly warrants the fitness of the machine; entitling the buyer to recover damages for breach of warranty upon its inability to do the required work.

SALES (165)—WARRANTY—BREACH—MEASURE OF DAMAGES.  The measure of damages for breach of implied warranty as to the fitness of a tractor for the purposes required, where the price was paid in advance and the machine retained notwithstanding the discovery of defects, is the actual damages which are the natural and probable result of the breach and fairly within the contemplation of the parties; and hence includes special damages incurred in doing the necessary work by teams, under immediate emergencies in the early part of the current season, where the seller was notified of the defects and attempted to remedy them; but not to similar losses in the ensuing year.

SALES (164-1)—WARRANTY—BREACH—DAMAGES—EVIDENCE—SUFFICIENCY.  Upon an issue as to the damages from breach of warranty of a tractor, sold for $800.91 and claimed to be worthless, a prima facie case as to the value of the machine at the time it was sold is not necessarily made out by testimony of an apparently hostile witness, formerly defendant's agent, that at the time of the trial (two years after the sale), it was worth only the price of junk, which witness thought was $20 a ton and that it weighed about 5,000 pounds.

Cross-appeals from a judgment of the superior court for Spokane county, Hurn, J., entered March 5, 1919, upon finding nominal and special damages, in an

[1] Reported in 187 Pac. 319.

action on contract, tried to the court. Affirmed on plaintiff's appeal; modified on defendant's appeal.

*Tustin & Chandler,* for appellant.

*Turner, Nuzum & Nuzum,* for respondent.

HOLCOMB, C. J. — The court below found for the plaintiff on his cause of action and rendered judgment thereon awarding special damages in the sum of $225, and nominal damages in the sum of $1, from which judgment both parties have appealed.

Defendant, which is the principal appellant, was a dealer in tractors in Oregon and Washington, and not a manufacturer. Respondent is a farmer of Spokane county, Washington, and about seventy years of age. The tractor in question, previous to its purchase by plaintiff, had been looked at superficially by him. It had been examined by the president of the appellant, Mr. Feenaughty. Plaintiff claims defendant represented it as a new tractor. At the trial Feenaughty, who denied any affirmative representations as to the quality of the tractor to plaintiff, admitted that the tractor was, "so far as he knew, a new machine"; that it had been sent by his concern to an agent or dealer in Idaho and used for demonstration purposes, and kept in a shed or barn so that it was not protected from the weather at the front end, and the paint was off the front end and there were two radiator pipes that had been damaged and it looked in bad shape. It had then been sent to Spokane and an attempt had been made to sell it to a Mr. Powell, who rejected it on account of its appearance and returned it to defendant. The sale to plaintiff, made shortly thereafter, was for cash, then and there paid, and not by sample, or subject to inspection or test, and it was thus an *executed* and not an *executory* sale. Defendant claims that it

was a second-hand machine, as shown by the evidence, and therefore the probabilities are that no express warranties would have been or were made as to its condition, and the rule is that no warranty can be implied. But it is evident that the machine was not considered as a second-hand machine by defendant and was not so represented to or received by plaintiff. Feenaughty testified that it was not mentioned as a second-hand machine, that he told plaintiff that it was a machine badly mussed up. On account of its appearance, it was sold to plaintiff at fifteen per cent from the list price.

Plaintiff claimed a recovery on warranties, both express and implied, as to the adaptability of the machine to do his work, its horse power and general qualities, arising from the information made to the seller of the exact amount of work it was desired to do and the reason why plaintiff desired a tractor on his farm, and that he had sold his horses and was not able to follow a plow and drive horses at his age, but that it was necessary to have a tractor. Besides asking for general damages in the sum of $800, plaintiff sought special damages, basing that right on the evidence that the use to which the tractor should be put was specifically explained to defendant, the necessity for its doing the work emphasized to and understood by defendant, and that the damages resulting to plaintiff as a consequence of its failure to do the work were within the contemplation of the parties and therefore recoverable.

The complaint alleges, and there is competent evidence to support the allegations, that defendant sold the tractor to plaintiff at Spokane for use on plaintiff's farm (which use was then and there disclosed to defendant), and necessary parts to be used in connection with the tractor, for the sum of $800; that defendant then and there, and as part of the consideration for

the purchase of the tractor by plaintiff, warranted that the tractor possessed eight horse power at the draw bar and sixteen horse power at the belt, and that it would pull three mould board plows and three or four disc plows, and that it possessed the power and adaptability to do all work required in plowing, cultivating and harvesting the crops on plaintiff's farm, and possessed the power and ability to do all work; that the tractor did not possess eight horse power at the draw bar nor sixteen horse power at the belt; that it would not pull three mould board plows or three or four disc plows, and that it possessed neither the required power nor adaptability to do the work required in plowing, cultivating and harvesting the crops on plaintiff's farm, and that it was so defective in design, build and workmanship that it was deficient in power for plowing and harvesting; that it was unsafe to operate because of a defective brake system; that at times it would not start at all, or run at all; that it could not be turned within a reasonable compass, and that, instead of having eight horse power at the draw bar, it would not do the work of two good horses, all of which made the tractor almost completely useless for farm work. It is then alleged that plaintiff suffered special damages in the sum of $800 during the years 1917 and 1918 by reason of having to hire men and teams to do the work that the tractor would not do, and by reason of injury to his crops in each of those years because of necessary and unavoidable delay in procuring men and teams to do his farm work, for which damages were demanded in the total sum of $1,600.

All the allegations of the complaint were put in issue except the sale of the tractor to plaintiff, which was alleged to be for the sum of $742.

Plaintiff first moves to strike the abstract of defendant and dismiss its appeal. We do not think this motion well taken, and it is therefore denied. *Wishkah Boom Co. v. Greenwood Timber Co.,* 100 Wash. 472, 171 Pac. 234.

Appellant demands reversal of the judgment upon three grounds: (1) The testimony preponderated in favor of the defendant; (2) that, even if there had been implied warranty in the sale of the tractor, the special damages allowed were not proper; (3) that there was no implied warranty in the sale of the machine under the circumstances of this case.

As to the first contention, the positive evidence of plaintiff with some corroboration as to the condition and performance of the machine and the reasonable probabilities surrounding the transaction was contradicted in chief by the positive evidence of Feenaughty as to most of the facts, and the probabilities are nowhere stronger in favor of defendant than in favor of plaintiff. The court having seen and heard the witnesses and found in favor of plaintiff in the main, we cannot say now that the testimony preponderates in favor of defendant. The court found, among other things, that no special warranties were made by defendant to plaintiff concerning its tractor previous to the time plaintiff purchased the tractor, and that there was an implied warranty accompanying the tractor that it was possessed of sufficient power and adaptability to do the work on plaintiff's farm, and that it would pull three mould board plows or four disc plows, and that it possessed power and ability to do all work required in properly plowing, cultivating and harvesting the crop on plaintiff's farm, and that it would run and possessed the power and ability to do his work; that the tractor did not possess sufficient power to pull three mould board plows or three or four disc plows,

or any more than one mould board plow and one disc
plow, or do plowing and discing at the proper depth
and as good farming dictated; that plaintiff experi-
enced considerable difficulty in starting the tractor
when using it on his farm, from the time the same was
purchased down to the time of the commencement of
this action; that the difficulties were experienced prob-
ably because the magneto was either not properly ad-
justed or timed, or not properly constructed or was de-
fective; that it would take from one to three hours to
get the tractor started, and when it was started it
would not continue to run, but would stop of its own
accord without any fault of plaintiff; that the tractor
would not turn in the soft plowed ground because of
its construction; that plaintiff also had difficulty in
operating said tractor on his farm in connection with
plowing, and that it did not possess sufficient power
to plow plaintiff's land when the plows were set at a
depth necessary to do good farming.

Upon these findings as to the facts concerning the
sale and the defects of the tractor, we have less diffi-
culty in deciding the rule of liability than the right to
recover damages as prayed and allowed. This was
not a sale by sample nor an executory sale to be made
after inspection, and therefore not governed by many
of the authorities cited by defendant. Neither did
plaintiff, upon discovery of the defects and the failure
of defendant to remedy them, upon notice thereof,
promptly rescind the sale and disaffirm the contract
and sue for a return of the purchase price, and it is
that situation which gives us difficulty.

As to the right of recovery under such implied war-
ranty as the court found under the facts, there can be
no doubt. A warranty is a statement or representation
made by the seller of goods contemporaneously with
and as a part of the contract of sale, though collateral

to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises that certain facts are or shall be as he represents them. A warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the treaty of sale, upon which it is intended that the buyer shall rely in making the purchase. A warranty is implied when the law derives it by implication or inference from the nature of the transaction, or the relative situation or circumstances of the parties. 35 Cyc. 365, 366.

And so, being a collateral undertaking only to the contract of sale, a warranty of the same effect, whether express or implied, will give rise to the same liability. An implied warranty is one which, not being expressly made, the law implies by the facts of the sale. An implied warranty of fitness will arise if the article is purchased for a particular purpose of which the buyer informs the seller, the rule applying especially if the seller is a dealer in the article, or the manufacturer thereof. 35 Cyc. 399; Benjamin, Sales (2d ed.), § 661; *Morris v. Bradley Fertilizer Co.*, 64 Fed. 55. And it being a part of the consideration of an executed sale, necessarily survives acceptance of the article.

So that where, as here, the court found that the facts of the sale were such that the defendant, having full knowledge of the kind and quality of tractor desired to be purchased by plaintiff and the particular purposes for which he desired it, whether defendant expressly or affirmatively warranted the tractor to fulfill those requirements when he knew and understood the requirements and sold the tractor, not after requiring inspection and test, but selling it for such use and requirements, thereby impliedly representing that the machine there under consideration was the machine which plaintiff required and desired, there was, as the

court found, an implied warranty, and upon that plaintiff would be entitled to recover damages for the breach of the warranty.

Plaintiff, however, receiving the tractor about March 30, 1917, commenced to use it on his farm about the eighth day of May, 1917, as early as the ground and season permitted, and found it defective. After making some effort to remedy the defect and use it, he notified the agent at Spokane, who sent a man to his farm. The man made some adjustment and left it. Plaintiff thereafter attempted further to use it and found it still defective, and, as shown by his testimony and some corroboration, the defects and incapacities of the tractor to fill the requirements of plaintiff, for which it had been purchased, were as found by the court.

The court further found that, during the year 1917, on account of the defects and failure of the tractor, plaintiff was compelled to hire men and teams to do the farm work which should have been done readily by the tractor had it been in proper condition; that the expense in that year for men and teams was $150; that the expense for similar purposes in the year 1918 was $75.

The general rule as to the measure of damages for defects in quality of the goods purchased where the price has been paid in advance and the goods delivered are of such inferior quality as to warrant their rejection, is that the buyer may recover the amount paid, unless he retains and continues to use the goods for his own benefit. 1 Sutherland, Damages (4th ed.), 311, 317. The price may, however, be recovered if the goods were accepted upon the promise that defects would be remedied and this could not be done, or if, on notice of defects, the article is removed by the seller. 35 Cyc. 604. In this case the price was paid

in advance and the article delivered of an inferior quality so as to warrant its rejection upon discovery thereof, but the buyer retained it and continued to use the article for his own benefit during the second year, 1918.

It is also the general rule that, on a breach of the sale by the seller, the buyer is entitled to recover the actual damages which he has sustained, which are the natural and probable result of the breach and may fairly be said to have been within the contemplation of the parties, and although no actual damages are shown, the buyer may, if there has been a breach of the contract, recover at least nominal damages. He is not, however, entitled to recover more than the actual damages sustained, or which, in the absence of special circumstances known to the seller at the time the contract was made, are not the natural and probable result of the breach and not reasonably within the contemplation of the parties. And if, as it was his duty to do, the buyer has been able to lessen his damages, he can recover only the damages actually sustained. 35 Cyc. 633; *Eichbaum v. Caldwell Bros. Co.*, 58 Wash. 163, 108 Pac. 434; *Wright v. Computing Scale Co.*, 47 Wash. 107, 91 Pac. 571. Of course, special damages, in view of these rules, are allowable in any case of breach of the warranty by the seller, where such special damages are reasonably within the contemplation of the parties and are the proximate and actual result of the failure to deliver such article as is warranted to be delivered. In this case, since the tractor was sold by defendant for the purposes made known to it by plaintiff, and it was notified of the defects during the early part of the season of 1917 and attempted to remedy them, we see no reason why special damages incurred in the summer of 1917 in procuring the teams and men to do the plowing and cultivating desired and

required of the tractor should not be allowed, because then nothing else was possible. An immediate emergency then existed, caused by the failure of the tractor to perform as relied upon. But not so for successive seasons or years. He could not retain the defective machine, attempt to use it, and increase or duplicate his damages. When the defect was not remedied upon notice and the seller did not retake the machine, we know of no rule in such case as this that will allow damages for the ensuing season, or year after year, as being the proximate and actual result of the defects of the machine known to the purchaser the preceding season and not remedied. Plaintiff is certainly not entitled to the cost of procuring men and teams in the season of 1918 for his plowing and cultivating. The item of $75 should, therefore, be stricken from the judgment.

Plaintiff also appeals from the refusal of the court to award him damages on account of the purchase price, found to be $800.91, such damages being proven in the sum of $750.91. It is contended that the value of the tractor, at the time of the trial, was simply that of junk, and that junk was worth about $20 a ton, and that the tractor weighed about 5,000 pounds. The trial judge held that the value of the tractor must be proven as of the day of the purchase. Plaintiff contends that the tractor was of the same value at the time of the trial as at the time of the purchase, that its use was negligible, and that the things that were inherently bad in it existed at the time of the purchase; and that all of these things being before the court, the testimony of the value of the tractor was sufficient to entitle him to an award of general damages of $750.91, which the evidence showed plaintiff had been damaged; perhaps not very strong, but sufficient to make a *prima facie* case as to the damages, and not being rebutted by de-

fendant, was sufficient to entitle the court to award the plaintiff such damages. We do not think this evidence sufficient to make a *prima facie* case, if the court did not so consider it in weighing the evidence mentioned. The witness testified that the tractor was worth, at the time he was testifying, "just the same as any 8-16 tractor we ever had there [witness having previously been an agent or employee of defendant], and that is just the price of junk"; that he did not know the price of junk, but thought it about $20 a ton, and thought that the weight of the tractor was about 5,000 pounds. The evidence bears on its face some evidence of hostility, bias and exaggeration, did not relate to the time of the purchase, and the court was entirely justified in disregarding it.

The judgment will therefore be affirmed on plaintiff's appeal, and modified on defendant's appeal to the extent of eliminating $75 from the judgment.

Defendant will recover costs on this appeal.

FULLERTON, MOUNT, BRIDGES, and TOLMAN, JJ., concur.