[No. 17822.  Department Two.  September 5, 1923.]

UNION IRON WORKS, *Respondent*, v. GEO. H. GRAY & SON, *Appellant*.[1]

SALES (159, 165)—SET-OFF IN ACTION FOR PRICE—DAMAGES NOT CONTEMPLATED. Upon a sale of mill machinery, the purchaser cannot claim a set-off for delay, which caused an added expense of rehandling logs on account of the small capacity of the mill pond, where the seller was not informed of this situation.

SAME (159, 165). Upon a sale of mill machinery, the purchaser cannot claim a set-off for delay causing the loss of contemplated profits upon a certain contract to supply timber, which contract was filled after the mill resumed operations.

Appeal from a judgment of the superior court for Spokane county, Grimshaw, J., entered July 11, 1922, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

[1]Reported in 218 Pac. 8.

*N. M. Sorenson,* for appellant.

*Post, Russell & Higgins* and *Corbin & Easton,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this action to recover for merchandise sold to the defendant, the purchase price being partly evidenced by note, and partly by open account. The defendant answered denying the amount due, and setting up, by an affirmative answer and cross-complaint, that plaintiff undertook to furnish certain machinery to the defendant to be used in its business of manufacturing lumber, and guaranteed the machinery to be so furnished to be suitable and sufficient for the purpose required; that the machinery, when received and installed, was found to be in part defective; that, by reason of the defects, the defendant could not operate its mill, was compelled to suspend its operations, expended $602.40 in procuring and installing proper machinery in the place of that which was defective, and,

". . . was required to remove and re-haul a large quantity of saw logs at an expense of $810, and was unable, during such time, to manufacture lumber, and box materials, and suffered a loss and damage in its business of the sum of $4,922.50."

The trial court allowed the expense of installing the machinery in the amount claimed, and gave judgment for the amount sued for, less such credit, denying the defendant any credit or recovery on account of the re-hauling of logs, or the interruption of its business, and consequent loss of profits. From this judgment, the defendant has appealed, assigning as error only the refusal of the court to award it damages on account of the re-haul of logs and the loss of profits.

It appears that appellant maintains a small pond at its mill site, capable of holding about 300,000 feet of

logs; that its practice was to dump the logs in this pond as hauled, from which they were carried into the mill and sawed. It is contended that, by reason of the delay caused by the defective machinery, the pond became full, and that thereupon appellant banked its logs outside of the pond; and when the mill again resumed operations, these banked logs had to be rehandled and put into the pond at an added expense of $1.50 per thousand feet. It does not appear that respondent was informed of this situation at the time the contract for the machinery was entered into, or at all, nor does any other fact appear from which it might be held that this situation was one which might be expected to arise in the usual course from the supplying of defective machinery, or such as might be within the contemplation of the parties when the contract was entered into, hence there was no error in denying damages therefor.

The second point as to loss of profits is based upon testimony to the effect that appellant had a contract to supply a purchaser with 500,000 feet of lumber at $20 per thousand feet; that its mill had a capacity of 30,000 feet per day, and it could manufacture and place its lumber on board cars at a cost of $15.80 per thousand feet, leaving a net profit of $4.20 per thousand or $126 per day, which, for the 39 days it is claimed that operations were interrupted, would amount to $4,914. It further appears, however, that this contract for lumber was filled after the mill resumed operations, the purchaser accepting the full amount of the lumber called for by the contract, in June and July instead of in April and May, as called for by the contract.

In addition to what we have already said on the first point, which is equally applicable here, how can it be assumed that there was any loss on this contract by reason of the delay? While we may assume that ap-

pellant would have manufactured other lumber in June and July if there had been no interruption of its operations, and if its contract just referred to had been filled in April and May, as contemplated, yet, we should have to enter the realm of uncertainty and speculation to hold that such lumber would have been disposed of at a profit. In such cases as this, the only damages recoverable are such as may fairly and reasonably arise in the usual course, or such as may reasonably be supposed to have been in contemplation of both parties at the time the contract was made. *Puget Sound Iron & Steel Works v. Clemmons,* 32 Wash. 36, 72 Pac. 465; *Hausken v. Hodson-Feenaughty Co.,* 109 Wash. 606, 187 Pac. 319.

The judgment appealed from is affirmed.

MAIN, C. J., FULLERTON, PARKER, and PEMBERTON, JJ., concur.