RICE, BARTON & FALES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14229.   Promulgated February 20, 1929.

*Harry Friedman, Esq.*, for the petitioner.
*Byron M. Coon, Esq.*, for the respondent.

OPINION.

ARUNDELL: The petitioner contends that the respondent erred in including in 1921 income the gain realized from the Mitsui contract because the regular practice of petitioner was to take up income in the year in which the goods manufactured under contract are accepted by the purchaser, which in this case it is claimed was in the year 1922. This practice it is argued is in accordance with that part of section 212(b) of the 1921 Act which provides that income shall be computed in accordance with the method regularly employed in keeping the books and subdivision (b) of article 36, Regulations 62, which deals with long-term contracts.

The contract here involved was executed October 1, 1920, and was to be completed by delivery of all parts f. o. b. Worcester "about May, 1921." As a matter of fact completion was delayed until September of 1921. Petitioner's argument on this point is that the contract was not completed within the meaning of article 36, Regulations 62, until the machines were set up in 1922 and operated, and cites section 47 of the Uniform Sales Act and several court decisions dealing with the question of right of inspection before acceptance. The citations are not in point. The contract we have here specifically provides that "the time of delivery is understood to be the date of shipment from the works of the builder." The contract reserved title in the builder until the machinery was fully paid for, which occurred in September, 1921. The contract was purposely so drawn in order to avoid difficulties that might have been encountered in enforcing payment after the machines reached Japan. The only conclusion that we can arrive at from these provisions is. that upon the final loading of parts and payment therefor the sale was completed and the income from the transaction realized. True, there was petitioner's guarantee that any parts built by it shown to have been defective at the time of shipment would be replaced free of charge, but this, as said with respect to a maintenance clause in contracts involved in *Receivers of Thomas Cronin Co.* v. *Heiner*, 28 Fed. (2d) 985, was collateral to the main contract. See also *Morris* v. *Bradley Fertilizer Co.*, 64 Fed. 55, 58. This is not contrary to *Pope* v. *Allis*, 115 U. S. 363, relied upon by petitioner. That case dealt with the right of a vendee to rescind the contract and sue for recovery of the purchase price. That right may or may not exist under the present contract, but we have no occasion in this proceeding to declare either way. All that we are concerned with is to determine whether

the gain realized from the contract is income in the year 1921. Petitioner had complied with its share of the bargain when it manufactured the machinery and delivered it to the vendee at the place specified. The vendee had discharged its obligations by acceptance at the place of delivery and payment of the contract price. Nothing remained to be done. The possibility of subsequent adjustments under the guarantee places the petitioner in no different situation than were the taxpayers in *Uvalde Co.*, 1 B. T. A. 932; *Mesta Machine Co.*, 12 B. T. A. 523; *Cronin Co.* v. *Lewellyn*, 9 Fed. (2d) 974; and *Receivers of Thomas Cronin Co.* v. *Heiner, supra.*

As to petitioner's method of keeping its books, the evidence is that they were kept according to the "finished contract method," that is, that profit or loss was not entered on the books until the machinery contracted for was put into operation and accepted, and that this method was used during the years 1920, 1921, and 1922. The terms of other contracts under which the petitioner manufactured goods for domestic purchasers are not in evidence, but it appears from the testimony that in such cases petitioner had but little fear of being unable to secure payment from the purchasers. The Mitsui contract, however, was entirely different. There petitioner entertained some doubt as to its ability to enforce collection in a foreign country and it accordingly protected itself by specifically providing in the contract for delivery within the United States and payment at that time. While for conservative accounting purposes it may have been proper to defer accounting for income under this contract until the machines were set up in Japan, such postponement is not proper under Federal taxing statutes. It is said in *Receivers for Thomas Cronin Co.* v. *Heiner, supra*, that:

> For its own purposes the plaintiff had the right to keep its books in such a manner that it could determine whether it had gained or lost upon each of its contracts. From that viewpoint its original method of bookkeeping may be quite correct, as, indeed, may be the method used in the amended return; but when, for tax purposes, gross income is carried as a liability for five years, with the result that the company is made to appear to have lost money during a particular year in which it actually made a considerable gain, then the method does not clearly reflect taxable income.

We have the same situation here except in the time of withholding income, which is a matter of degree only. In our opinion the gain realized from the Mitsui contract should have been reported in the year 1921 in order to correctly reflect income for that year.

There are several arguments made against the inclusion in income by the respondent of the $20,000 received from the Riordan Company. One is that the amount was a gift. This theory does not impress us. It was claimed, as shown by the correspondence, as the amount of additional cost to build the machine which was caused by the delay

in construction at the purchaser's request. It was, as said by the purchaser in its letter, a further payment on the drying machine. Regardless of whether the claim was enforceable or not, the payment was clearly one growing out of a business transaction and was not merely a gratuity. See *Ira A. Kip, Jr.*, 3 B. T. A. 50.

It is further urged that the $20,000 is only a diminution of a loss and therefore can not be income. It is agreed by the parties that the cost to petitioner of manufacturing the machine was $20,000 more than the contract price. But petitioner had the benefit of this loss as a deduction against income in 1920 and consequently when the payment was received later it was income, *Cf. Chicago, Rock Island & Pacific Rwy. Co.*, 13 B. T. A. 988.

The argument proceeds that if the amount is income in any year it is income in 1920 because the check was received in that year and the petitioner was on the accrual and completed-contract basis. The evidence is not at all clear as to when the check was received. All that we have on this is that receipt of the check was acknowledged on January 3, 1921, and entered on the books on that date. This is not sufficient to overcome the presumption of correctness attaching to the respondent's finding. In view of petitioner's insistence that there was no enforceable obligation in respect to this payment, it hardly seems that it had anything to accrue prior to actual receipt.

*Judgment will be entered for the respondent.*